UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW DEROCHA,

                                         Plaintiff,

v.                                                      5:26-cv-0696
                                                      (BKS/CBF)

SYRACUSE POLICE DEPARTMENT,

                                         Defendant.

_____

APPEARANCES:

MATTHEW DEROCHA
*Plaintiff, pro se*
6159 Crestview Dr.
North Syracuse, NY 13212

**CARLA B. FREEDMAN**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.      INTRODUCTION

The Clerk has sent to the Court for review pleadings submitted by *pro se* plaintiff Matthew DeRocha ("Plaintiff").  Dkt. Nos. 1, 5.  Plaintiff also seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. No. 2.

### II.     IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt. No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore, he is granted permission to proceed IFP.[1]

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

### III.    BACKGROUND

Plaintiff commenced this action by filing a complaint on April 10, 2026, which listed one defendant, "Syracuse Police Department police officers."  Dkt. No. 1 at 1.[2]  The pleading alleges, in full, "I was arrested on 8/7/2025 by the Syracuse police charged with menacing first a class E felony criminal pos[sess]ion of a weapon fourth a class A misdemeanor still pending in Syracuse court before Judge Ann Magnarelli and unindicted."  *Id*. at 2.  On May 22, 2026, Plaintiff submitted a letter containing the docket numbers of three cases he had commenced, (1) 5:26-CV-00696, (2) 5:26-CV-00697, and (3) 5:26-CV-00699, indicating "the claims submitted are [sic] for corrected as the police individually and involved in arrests of myself from August 2023 - July 2025" and that he planned to "submit police reports and facts cause of action and relief and use the same case files if that's ok."  Dkt. No. 4 at 1 (cleaned up).

Plaintiff filed an amended complaint in this action on June 29, 2026, utilizing this District's form civil rights complaint pursuant to 42 U.S.C. § 1983.  *See generally*, Dkt. No. 5. The amended complaint lists three defendants, "Syracuse Police Officer[s]" "Hess" and "Fredrick Lathrop" and "Syracuse Police Officer Supervisor" "Pelz Dallas."  *Id*. at 1-2.  Plaintiff alleges "on August 25th 2023 the Syracuse police arrested Me Matthew DeRocha on p[u]rpose for no reason knowing it was an illegal[] arrest."  *Id*. at 2.

Plaintiff avers "a girl . . . broke into my house" and "started punching me in the face and started bugging out about my name being tattooed on me and to get it off she then sat on the floor with a razor."  *Id*. at 3.  Plaintiff "called the police on her" and when "the police arrived"

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff allowed them into the residence and "explained its not the person she said she is" and stated he wanted her removed from the home. *Id*. He further suggested "they should finger print her" and the officers "put her in handcuffs then took her outside saying I have a order of protection on her." *Id*.

Plaintiff told the officers "no Im not that guy then they took her up the street" and Plaintiff "said I dont need charges pressed just facts its not [sic] desdre my girl friend that I don't want here either." *Id*. at 4. Plaintiff closed the door but "they knocked a minute later and arrested" Plaintiff. *Id*. Plaintiff

> called the police and they changed the stor[]y to I broke into her
> room when I live there not anyone else and I hit her and she never
> had a knife in her hand when they got there and she was doing drugs
> on my floor the denied this too instead said she was the person with
> the order of protection on me knowing it wasnt true.

*Id*. Plaintiff was arrested "for criminal contempt 1st and harassment 2nd." *Id*. at 3. "The criminal contempt 1st in Syracuse city court is still pending unindicted past 6 months limitation laws." *Id*. at 5.

The amended complaint lists three causes of action: (1) false arrest, (2) malicious prosecution, and (3) false imprisonment. *Id*. at 6. With regard to relief, Plaintiff requests "punitive damages 1 million dollars bail 2500 and non mon[e]tar[]y emotional stress pain and suffering half million dollars 500000." *Id*. at 7.

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d

3

Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See*, *e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . .") (internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.      ANALYSIS

"The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure." *Lewis v. New York State Bd. of Elections*, No. 8:24-CV-00849 (GTS/CFH), 2024 WL 4910561, at *4 (N.D.N.Y. Sept. 30, 2024) (additional quotations and citations omitted), *report and recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024).  A complaint that fails to comply with the Federal Rules' pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also*, *e.g.*, *Gosier v. Collins*, No.

6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at \*2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The purpose of this Rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted).

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). To state a valid claim under § 1983, a plaintiff must allege the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Here, Plaintiff's amended complaint fails to provide the Defendants with fair notice of the claims asserted and fails to state a valid claim under § 1983. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own

6

individual actions."). Plaintiff's amended complaint entirely fails to specify how *the Defendants* harmed him. *See generally*, Dkt. No. 5. Indeed, none of the three named Defendants are mentioned in Plaintiff's recitation of facts. *See id.* at 2-5; *see also*, *e.g.*, *LaPietra v. City of Albany Police Dep't*, No. 9:19-CV-1527 (TJM/TWD), 2020 WL 5891888, at *9 (N.D.N.Y. Oct. 5, 2020) (explaining, "[t]he use of the terms 'they,' or 'the police' or 'officer' as a name for alleged defendants is not adequate to state a claim against a 'person' as required in § 1983 actions.") (citation omitted), *report and recommendation adopted*, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020).[3]

As such, Plaintiff's pleadings should be dismissed for failure to state a claim. *See*, *e.g.*, *Rummler v. Jefferson Cnty. Emergency Med. Serv.*, No. 5:25-CV-1062 (BKS/TWD), 2025 WL 3144207, at *3 (N.D.N.Y. Oct. 15, 2025) (recommending dismissal of complaint wherein plaintiff alleged "he was subjected to wrongdoing" but "the complaint lack[ed] any explanation as to how *the Defendant* harmed him" as "the sole Defendant [wa]s not mentioned in Plaintiff's

---

[3] Additionally, the undersigned notes Plaintiff's claims may be barred by *Heck v. Humphrey*. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."). "Courts have held that a plaintiff 'cannot pursue a civil rights claim based on false arrest and malicious prosecution while criminal charges are still pending against him in State Court.'" *Mitchell v. Kindlon*, No. 9:25-CV-0602 (MAD/TWD), 2025 WL 1951849, at *5 (N.D.N.Y. July 16, 2025) (quoting *Singleton v. State of N.Y.*, 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998)), *reconsideration denied sub nom.*, *Mitchell v. Blain-Lewis*, 2025 WL 3136383 (N.D.N.Y. Nov. 10, 2025); *see also*, *e.g.*, *Hardie v. City of Albany*, No. 1:18-CV-0470 (GLS/CFH), 2018 WL 4026736, at *5 (N.D.N.Y. Aug. 22, 2018) ("If there are charges that are pending or if plaintiff pleaded guilty to the charges/has been convicted of the charges, the potential claims for false arrest and false imprisonment may be barred by *Heck v. Humphrey*."), *report and recommendation adopted*, 2018 WL 4288614 (N.D.N.Y. Sept. 7, 2018).

recitation of the facts.") (emphasis in original, additional quotations and citations omitted), *report and recommendation adopted*, No. 5:25-CV-1062 (BKS/TWD), 2025 WL 3142416 (N.D.N.Y. Nov. 10, 2025).  However, in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed without prejudice to allow Plaintiff the opportunity to cure these defects.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any such amended pleading should specifically identify the legal theory or theories that form the basis for his claim.  Plaintiff is cautioned that no portion of his prior complaints shall be incorporated into any amended pleading by reference.  Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

VI.   **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) and amended complaint (Dkt. No. 5) be **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

  **IT IS SO ORDERED.**

Dated: July 17, 2026
    Syracuse, New York

_____
Carla B. Freedman
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 10 of 111

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1]   The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2]   Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

**II. Initial Review**

**A. Legal Standards**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

 **\*2**  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]     Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]     Plaintiff did not provide any transcripts.

### C. Discussion[6]

[6]     As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. <u>Heck v. Humphrey</u>

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 14 of 111

2024 WL 4870495

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

> In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

> [ ]

> Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7]  The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8]  Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

 **\*6**  "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

 **\*7**  In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

Case 5:26-cv-00696-BKS-CFB    Document 6    Filed 07/17/26    Page 16 of 111

2024 WL 4870495

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).
>
> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9]     Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

*8 It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 17 of 111
2024 WL 4870495

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Cole v. Smrtic, Not Reported in Fed. Supp. (2025)

2025 WL 247901

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

2025 WL 247901

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, \*14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, \*5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, \*5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 247901

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

2024 WL 4910561
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

No. 8:24-CV-00849 (GTS/CFH), No. 8:24-CV-01036 (GTS/CFH)

|

Signed September 30, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se.

### REPORT-RECOMMENDATION AND ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

**\*1** Plaintiff pro se Scott Lewis ("plaintiff") [1] purported to commence this action on July 4, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2]

[1]     The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 9 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No. 12 (dismissing complaint without leave to amend); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 25 (dismissing amended complaint); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v.

Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with leave to amend); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 15 (partially dismissing complaint, permitting one claim to proceed); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. State of Texas, 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:24-CV-03092 (LTS) (S.D.N.Y. filed Apr. 20, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

2      Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Consolidation

**\*2**  "Rule 42(a) of the Federal Rules of Civil Procedure provides for the consolidation of actions pending before the court which involve 'a common question of law or fact.' " Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at \*1 (N.D.N.Y. July 28, 2021) (quoting FED. R. CIV. P. 42(a)(2)). "As the Second Circuit has recognized, '[t]he trial court has broad discretion to determine whether consolidation is appropriate,' and may consolidate actions sua sponte." Id. (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and citing Devlin v. Transp. Commc'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999)); see Innovation Ventures v. Ultimate One Distrib. Corp., No. 12-CV-5354 (KAM/RLM), 2014 WL 824304, at \*2 (E.D.N.Y. Mar. 3, 2014) ("A court may consolidate related cases sua sponte under Rule 42(a).") (citation omitted). "The Court must consider in each case the possible risks and benefits of consolidation." Boyde, 2021 WL 3185472, at \*1; see Jacobs v. Castillo, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation ... further[s] the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). "The paramount concern is whether savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Wolm v. Ahern, No. 14-CV-3978 (JFB/GRB), 2014 WL 5171763, at \*1 (E.D.N.Y. Oct. 8, 2014) (citing Johnson, 899 F.2d at 1285).

Here, plaintiff commenced the instant case, 8:24-CV-00849, Lewis v. New York State Board of Elections (hereinafter "Lewis I"), on July 4, 2024. See Compl. (hereinafter "Compl. I"). Nearly seven weeks later, on August 21, 2024, plaintiff commenced a second action, 8:24-CV-01036, Lewis v. New York State Board of Elections (hereinafter "Lewis II"), with the filing of a separate complaint (hereinafter "Compl. II"). The undersigned has reviewed both complaints in each action, and has determined "that common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at \*1. "Plaintiff appears to name the same defendant[, the New York State Board of Elections,] and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in [both] of these ... actions." Lamothe v. Brown, No. 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at \*1 (D. Vt. Jan. 19, 2023), report and recommendation adopted, 2023 WL 3301220 (D. Vt. May 8, 2023). Notably, both of the complaints filed by plaintiff challenge the constitutionality of New York State's election laws,[3] and his claims derive from his "run to represent New York State's 21st Congressional District" in the upcoming November 2024 general election. Compl. I at 3; Compl. II at 5.[4] Thus, "[c]onsolidating these actions will avoid 'unnecessary repetition and confusion.' " Royal v. Shulkin, No. 1:17-CV-1251 (GTS/CFH), 2018 WL 1229701, at \*1 (N.D.N.Y. Jan. 5, 2018) (quoting Miller v. U.S. Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984)), report and recommendation adopted, 2018 WL 1229822 (N.D.N.Y. Mar. 8, 2018); see Morales v. Pallito, No. 1:13-CV-141, 2013 WL 3148411, at \*1 (D. Vt. June 19, 2013) ("[The plaintiff] is bringing the same claim against the same [d]efendant in both cases. [The defendant] has not yet been served and, consequently, there has been no responsive pleading and no discovery. The Court thus finds that the interests of justice will be best served by consolidation, as carrying these two actions forward as one enhances judicial economy, with no prejudice to any party.").

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 22 of 111

2024 WL 4910561

3  In <u>Lewis I</u>, plaintiff challenges the constitutionality of sections 6-132, 6-134, 6-136, 6-140, 6-142, and 6-158 of the New York Election Law. <u>See</u> generally Compl. I. In <u>Lewis II</u>, plaintiff challenges the constitutionality of section 16-102 of the New York Election Law. <u>See</u> generally Compl. II.

4  Citations are to the pagination generated by CM/ECF, located in the header of each page.

**\*3** Accordingly, it is recommended that these two cases be consolidated, with <u>Lewis I</u> as the lead case, and <u>Lewis II</u> as a member case.

### III. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." [5] 28 U.S.C. § 1915(e)(2)(B). [6] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." <u>Praileau v. Fischer</u>, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

5  " 'A case is malicious if it was filed with the intention or desire to harm another.' " <u>Tafari v. Hues</u>, 473 F.3d 440, 442 (2d Cir. 2007) (quoting <u>Andrews v. King</u>, 398 F.3d 1113, 1121 (9th Cir. 2005)). A case "is frivolous when it 'lacks an arguable basis either in law or in fact' " and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' " <u>Id.</u> (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989)).

6  These requirements apply to non-prisoner pro se litigants. <u>See</u> N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." <u>Kirkland v. Cablevision Sys.</u>, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

<u>Id.</u> (internal quotation marks, citations, and footnote omitted); <u>see</u> <u>also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). [7] Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the

2024 WL 4910561

claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

7     The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.' " Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); see Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure") (citations omitted).

**\*4** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [8] Notably, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

8     All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 24 of 111

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

**B. Plaintiff's Complaint**

Plaintiff offers us a brief history lesson on the two-party political system in the United States. See Compl. I at 1-3. As relevant here, plaintiff claims that "[i]n New York State, Republican and Democrat lawmakers alike have created unconstitutional additional requirements in attempts to subvert an individual's Constitution[al] right to candidacy, such as [p]laintiff's, by drafting and passing laws with undue burdens, with the goal of preventing the emergence of any new or independent political party." Id. at 2, ¶4. Plaintiff complains that George Washington "warned of such a scenario," quoting Washington's September 17, 1796, farewell address. Id. at 2, ¶5. Plaintiff then reiterates that

> [election] laws in New York State ... [are] unconstitutional [and] continue to subvert the power of the people [because i]ndividuals who are not aligned with any political party and seeking access to the ballot, such as [p]laintiff, are subjected to a barrage of unconstitutional additional requirements which consequently create undue burdens and unfair circumstances to the would-be independent candidate.

Id. at 2, ¶6.

**\*5**  Plaintiff asserts that he is "an individual over the age of twenty-five, a citizen of the United States for over seven years and a resident of New York State, thus qualified to be elected to Congress pursuant to the United States Constitution." Compl. I at 3, ¶8. Plaintiff "announced a run to represent New York State's 21st Congressional District on or around March 13, 2024." Id. at 3, ¶12. "Plaintiff began circulating an independent nominating petition on April 16, 2024." [9], [10] Id. at 3, ¶13. "The deadline to file three thousand five hundred (3,500) signatures for an independent nominating petition was May 28, 2024." [11] Id. at 4, ¶14. "Plaintiff filed approximately three thousand eight hundred twenty eight (3,828) signatures on May 28, 2024." Id. at 4, ¶15. Two individuals, including Margaret Bartley, the chair of the Essex County Democratic Committee, "filed general objections and specifications challenging the petition on various grounds." Compl. II at 56-59. After conducting a prima facie examination of the petition, the New York State Board of Elections "invalidated [p]laintiff's independent nominating petition on or around June 13, 2024, claiming [p]laintiff only submitted three thousand four hundred ninety three (3,493) signatures, leaving [p]laintiff seven (7) signatures short of the unconstitutional requirement." Compl. I at 4, ¶16; see Compl. II at 2, ¶10, 59.

[9]   Plaintiff claims that "[t]hose running for a political party [were] able to circulate petitions from February 27, 2024 until April 4, 2024," but "[i]ndependent petitions were circulated between April 16, 2024 and May 28, 2024." Compl. I at 5, ¶¶24-25.

[10]   Plaintiff alleges that he "was unlawfully evicted on or around May 10, 2024." Compl. I at 5, ¶30. Plaintiff does not specify what he means by "unlawfully evicted," or otherwise explain how this relates to the instant action. Id.

[11]   Plaintiff contends that "petitions for political parties have a filing deadline of Thursday, April 4, 2024 while independent nominating petitions have a deadline of Tuesday, May 28, 2024." Compl. I at 7, ¶37.

On June 13, 2024, "[p]laintiff filed a lawsuit in the Albany County Supreme Court challenging [the New York State Board of Elections'] determination." Compl. I at 4, ¶17; see Compl. II at 2, ¶11. Specifically, plaintiff "filed a proposed order to show cause and petition commencing [a special] proceeding pursuant to Election Law § 6-102 seeking to validate his petition." Compl. II at 59. After plaintiff filed multiple amended petitions, "Honorable Christina L. Ryba signed an order to show cause on June 17, 2024 permitting service by overnight mailing on or before June 19, 2024." Id. at 2, ¶12. "Plaintiff served all parties via overnight mailing by June 19, 2024." Id. at 3, ¶13. However, Ms. Bartley and Paula Collins, plaintiff's political opponent in the upcoming election, "had refused 'actual delivery' of the overnight mailing." Id. at 3, ¶15. "Oral arguments were heard on June 28, 2024[,]" when plaintiff explained "that service was completed timely and thus, the special proceeding was initiated

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 25 of 111

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

timely." [12] Id. at 3, ¶¶15-16. However, Ms. Bartley argued that the proceeding should be dismissed as untimely because, under N.Y. Elec. Law § 16-102, plaintiff needed to serve all parties by June 18, 2024, and he failed to do so. See id. at 58-61. Following oral arguments, on July 3, 2024, Hon. Ryba dismissed the proceeding as untimely. See Compl. II. at 58-62.

[12]     However, in Lewis I, plaintiff claims the hearing took place "on or around June 11, 2024." Compl. I at 6, ¶32.

Plaintiff now seeks to "challeng[e] the constitutionality of New York State's election laws[,]" including (1) "§ 6-136 and § 6-142, which dictate the number of signatures required for nominating petitions"; (2) "§ 6-158 which mandates the deadlines imposed for filing nominating petitions"; (3) "§ 6-134 which outlines the rules for nominating petitions"; (4) "§ 6-132 and 6-140, laws governing the required form of nominating petitions"; and (5) "16-102 which dictate[s] the institution of a special proceeding." Compl. I at 1 (citing N.Y. ELEC. LAW §§ 6-132, 6-134, 6-136, 6-140, 6-142, 6-158); Compl. II at 1 (citing N.Y. ELEC. LAW § 16-102). Plaintiff alleges that these laws violate "the First and Fourteenth Amendment of the United States Constitution" and he "requests this court to issue declaratory and injunctive relief preventing the New York State Board of Elections ... from enforcing restrictive and unconstitutional laws and ordering [p]laintiff's name on the ballot for the 2024 general election." Compl. I at 3, ¶7; see Compl. II at 1.

### C. Analysis

**\*6** Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 against the New York State Board of Elections, [13] alleging violations of his First and Fourteenth Amendment rights. [14] See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); cf. Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) ("The solicitude afforded to pro se litigants ... most often consists of liberal construction of pleadings, ... [however,] the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented.").

[13]     "Under New York law, the [New York State Board of Elections] is responsible for, the execution and enforcement of ... statutes governing campaigns, elections and related procedures." Schulz v. Williams, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citing N.Y. ELEC. LAW § 3-104).

[14]     Although plaintiff refers to various individuals throughout Compl. I and Compl. II, including Ms. Bartley and Ms. Collins, he does not appear to pursue any claims against them in these actions, as he has made clear that he is solely "challenging the constitutionality of New York State's election laws." Compl. I at 1; Compl. II at 1. Moreover, as indicated previously, plaintiff appears to be an experienced litigator. See supra note 1, 7. Earlier this year, the undersigned reviewed a separate complaint filed by plaintiff in a separate action, and added parties that were mentioned in the complaint but not specifically identified in the "parties" section, in efforts to liberally construe plaintiff's submissions and interpret them to raise the strongest arguments that they suggest. See Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10. Plaintiff was extremely unappreciative of this, as he "explicitly object[ed] to the addition of parties," claimed that the undersigned's actions were "improper," and argued that he correctly pleaded the proper parties in the "parties" section of his complaint. Id., Dkt. No. 13 at 1-2. Thus, because the only party identified in the "parties" section of Compl. I and II is the New York State Board of Elections, and given plaintiff's litigation history, it appears that he does not intend to pursue claims against any other parties. See generally Compl. I, Compl. II. In any event, plaintiff's claims regarding Ms. Bartley and Ms. Collins "amount to nothing more than a rant more fitting of an editorial than a legal pleading." Dillon v. Bush, No. 3:05-CV-188 (LAC/MD), 2005 WL 8163072, at *5 (N.D. Fla. Aug. 12, 2005).

2024 WL 4910561

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Off. of Child. & Fam. Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)); see Garcia v. Paylock, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.") (citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); see Torres v. Off. of Adult Prob., No. 3:22-CV-00883 (SALM), 2023 WL 3259781, at *4 (D. Conn. May 4, 2023) (explaining that, although the plaintiff may bring a claim for injunctive relief against individual state officials, the plaintiff may not bring such a claim against the state itself or its agencies) (citing Off. of Consumer Couns. v. S. New Eng. Tel. Co., 502 F. Supp. 2d 277, 291 (D. Conn. 2007)).

**\*7** " '[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' " Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); see Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 30-32 (2d Cir. 1991)); see also Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing Pennhurst State School & Hosp., 465 U.S. at 99-102). "[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment[.]" Credico v. N.Y. State Bd. of Elections, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (citing McMillan v. N.Y. State Bd. of Elections, No. 10-CV-2502 (JG/VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010), aff'd, 449 F. App'x 79 (2d Cir. 2011) (summary order)); see Murawski, 285 F. Supp. 3d at 696 (collecting cases); see also Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity.") (citations omitted). Specifically, "common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach" to the New York State Board of Elections. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994).

"There are three limited exceptions to state sovereign immunity." Tiraco, 963 F. Supp. 2d at 191. "First, a state may waive its sovereign immunity by consenting to suit in federal court." Id. at 191-92 (citing Iwachiw v. N.Y.C. Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002), aff'd, 126 F. App'x 27 (2d Cir. 2005) (summary order)) (additional citation omitted). "Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority." Leibovitz v. Barry, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *5 (E.D.N.Y. Sept. 20, 2016) (citing Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 80 (2000)). "Third, under the Ex parte Young doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law." Tiraco, 963 F. Supp. 2d at 192 (citing State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007)); see Anghel v. N.Y. State Dep't of Health, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) ("[T]he doctrine of Ex Parte Young, ... 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law.' ") (quoting CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002)), aff'd, 589 F. App'x 28 (2d Cir. 2015) (summary order).

However, none of these exceptions apply here. First, New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaints. See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' ") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). "It is well-established

that New York has not consented to § 1983 lawsuits in federal court[.]" <u>Mamot v. Bd. of Regents</u>, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (citation omitted); <u>see Iwachiw</u>, 217 F. Supp. 2d at 379-80 ("New York State has not waived its Eleventh Amendment [immunity] in claims involving write-in candidates in United States Senatorial Primaries[.]"); <u>see also</u> <u>Dekom v. New York</u>, No. 12-CV-1318 (JS/ARL), 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (dismissing § 1983 claims against the New York State Board of Elections on Eleventh Amendment immunity grounds), <u>aff'd</u>, 583 F. App'x 15 (2d Cir. 2014) (summary order).

 **\*8**  Second, Congress has not "abrogated New York's sovereign immunity from suit by acting pursuant to a grant of constitutional authority." <u>Tiraco</u>, 963 F. Supp. 2d at 192. Indeed, 42 U.S.C. § 1983 does not override New York's sovereign immunity. <u>See Mayo v. Doe</u>, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) ("Section 1983 does not abrogate state sovereign immunity") (citing <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979)); <u>see also</u> <u>Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal</u>, No. 04-CV-3886 (NGG/LB), 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005) (holding that 42 U.S.C. § 1983 does not override New York's Eleventh Amendment sovereign immunity).

Third, the <u>Ex Parte Young</u> doctrine does not appear to salvage plaintiff's claims for injunctive and declaratory relief against the New York State Board of Elections. <u>See Tiraco</u>, 963 F. Supp. 2d at 192; <u>see Ex parte Young</u>, 209 U.S. 123 (1908). Indeed, plaintiff "does not follow the requirement, established in <u>Ex Parte Young</u>, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." <u>Santiago</u>, 945 F.2d at 32 (citing <u>Pennhurst State Sch. & Hosp.</u>, 465 U.S. at 102); <u>see Melrose v. N.Y. State Dep't of Health Off. of Pro. Med. Conduct</u>, No. 05-CV-8778 (SCR/LMS), 2009 WL 211029, at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the <u>Ex Parte Young</u> exception to apply.") (citations omitted); <u>see also</u> <u>Harris v. N.Y. State Educ. Dep't</u>, 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) ("Actions for injunctive relief under the <u>Ex parte Young</u> exception to [sovereign immunity] constitute suits against state officials, not against the state or state agency itself.").

Specifically, although plaintiff seeks injunctive relief, he has only named the New York State Board of Elections and has failed to name any individual state official as a defendant. <u>See Tiraco</u>, 963 F. Supp. 2d at 192 (dismissing the plaintiff's claims asserted against the New York State Board of Elections based on sovereign immunity, notwithstanding that the plaintiff sought prospective injunctive and declaratory relief, because he "failed to name any state official as a defendant"); <u>cf. Gallagher v. New York State Bd. of Elections</u>, 477 F. Supp. 3d 19, 37 (S.D.N.Y. 2020) ("Plaintiffs' ... claims against the [New York State Board of Elections], therefore, are barred by sovereign immunity. But their federal claims against the [Board's] officers and Governor Cuomo ... are not barred.") (citations omitted); <u>Cohen v. Richardson</u>, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 418788, at *3 (N.D.N.Y. Feb. 5, 2024) (concluding that the Eleventh Amendment did not bar the plaintiff's suit, where the plaintiff "only [sought] declaratory and prospective injunctive relief" against named individuals employed by the New York State Board of Elections) (citing <u>Cecos Int'l, Inc. v. Jorling</u>, 706 F. Supp. 1006, 1024 (N.D.N.Y. 1989) ("[T]he [E]leventh [A]mendment does not forbid federal courts from granting injunctive relief against a state official acting contrary to the United States Constitution."), <u>aff'd</u>, 895 F.2d 66 (2d Cir. 1990)), <u>reconsideration denied</u>, 2024 WL 3653801 (N.D.N.Y. Aug. 5, 2024).

Consequently, the New York State Board of Elections is entitled to sovereign immunity. <u>See Yang v. Kellner</u>, 458 F. Supp. 3d 199, 208 (S.D.N.Y.) ("Because New York has not consented to be sued, and because Congress has not enacted legislation abrogating New York's Eleventh Amendment immunity with regard to [the p]laintiffs' ... causes of action, the claims against the [Board of Elections] as a state agency are barred by sovereign immunity."), <u>aff'd sub nom. Yang v. Kosinski</u>, 960 F.3d 119 (2d Cir. 2020); <u>see also</u> <u>McMillan</u>, 449 F. App'x at 80 (affirming dismissal of the plaintiff's claims against the New York State Board of Elections as barred by the Eleventh Amendment); <u>Ulanov v. N.Y. State Bd. of Elections</u>, No. 22-CV-193 (AMD/LB), 2022 WL 173112, at *2 (E.D.N.Y. Jan. 19, 2022) ("Accordingly, the New York State Board of Elections is immune from suit, and the plaintiff's claims against it must be dismissed."), <u>reconsideration denied</u>, 2022 WL 767865 (E.D.N.Y. Mar. 14, 2022).

 **\*9**  "The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." <u>Griffith v. New York State</u>, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) (citing <u>Crumble v. United States</u>, No. 1:23-CV-4427 (LTS), 2023 WL 5102907, at *7 (S.D.N.Y. Aug.

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 28 of 111
Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

7, 2023), and <u>Nguyen v. Kijakazi</u>, No. 20-CV-0607 (MKB), 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022)), <u>report</u> <u>and</u> <u>recommendation</u> adopted, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024); <u>see</u> <u>Wang v. Delphin-Rittmon</u>, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("[S]overeign immunity strips the court of jurisdiction[.]") (citing <u>Smith v. Scalia</u>, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), <u>aff'd</u>, 2015 WL 13710107 (D.C. Cir. 2015)); <u>see</u> <u>Iwachiw</u>, 217 F. Supp. 2d at 383 (dismissing the plaintiff's section 1983 action against the New York State Board of Elections for lack of subject matter jurisdiction under the Eleventh Amendment, noting "[t]he Eleventh Amendment is an explicit limitation on federal jurisdiction") (internal quotation marks and citations omitted). Thus, it is recommended that plaintiff's claims against the New York State Board of Elections be dismissed without prejudice for lack of subject matter jurisdiction. <u>See</u> <u>Abadi v. City of New York</u>, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed without prejudice.") (citing <u>Katz v. Donna Karan Co., L.L.C.</u>, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")).

### IV. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Nielsen v. Rabin</u>, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " <u>Edwards v. Penix</u>, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim. <u>See</u> <u>Meyers v. Becker</u>, No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *6 (N.D.N.Y. Apr. 5, 2023), <u>report</u> <u>and</u> <u>recommendation</u> adopted, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023); <u>see also</u> <u>Stiegman v. New York State Off. of Info. Tech. Servs.</u>, No. 1:19-CV-18 (GTS/CFH), 2019 WL 1762900, at *5 (N.D.N.Y. Apr. 22, 2019) (dismissing the plaintiff's claims against a New York state agency as barred by sovereign immunity, but granting the plaintiff leave to amend should the plaintiff wish to name an individual state official pursuant to the <u>Ex Parte Young</u> exception), <u>report</u> <u>and</u> <u>recommendation</u> adopted, 2019 WL 4727444 (N.D.N.Y. Sept. 27, 2019). Thus, it is recommended that plaintiff's complaint be dismissed without prejudice and with leave to amend should plaintiff wish to name a proper party or plead a proper claim. [15]

[15]    Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. <u>See, e.g.</u>, <u>Anthony v. Fein, Such & Crane, LLC</u>, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), <u>report</u> <u>and</u> <u>recommendation</u> adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

### V. Conclusion

**\*10**  **WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against the New York State Board of Elections be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 29 of 111

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

**RECOMMENDED**, that this matter (8:24-CV-00849, "Lewis I") be **CONSOLIDATED** with 8:24-CV-01036 ("Lewis II"), with the lead case being 8:24-CV-00849, and the member case being 8:24-CV-01036; and it is further

**RECOMMENDED**, that, if consolidation is granted, this Report-Recommendation and Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [16]

[16]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4910561

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 30 of 111

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4689022

2024 WL 4689022
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

8:24-CV-0849 (GTS/CFH), 8:24-CV-1036 (GTS/CFH)

|

Signed November 6, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, Plaintiff, Pro Se, 1936 Saranac Ave, #3, PMB 411, Lake Placid, NY 12946.

HON. LETITIA A. JAMES, AIMEE COWAN, ESQ., Assistant Attorney General, Counsel for Defendant, 300 South State Street, Suite 300, Syracuse, NY 13202.

## DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in each of the two above-captioned civil rights actions filed by Scott Phillips Lewis ("Plaintiff") against the New York State Board of Elections ("Defendant"), is a Report-Recommendation by United States Magistrate Judge Christian F. Hummel recommending that (1) the matters be consolidated, with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036, and (2) Plaintiff's Complaint in each action be *sua sponte* dismissed without prejudice and with leave to amend. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.) In each action, Plaintiff has filed an Objection, and Defendant has filed a Response to that Objection. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 28; Action No. 8:24-CV-1036, Dkt. Nos. 30, 31.) For the reasons set forth below, each Report-Recommendation is accepted and adopted in its entirety, the matters are consolidated (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036), and Plaintiff's Complaint in each action shall be dismissed unless Plaintiff files an Amended Complaint within thirty days of the entry of this Decision and Order.

As an initial matter, the Court finds that (1) because neither of Plaintiff's Objections challenges Magistrate Judge Hummel's recommendation regarding consolidation, that recommendation need be (and is) reviewed only for clear error,[1] and (2) that recommendation survives that clear-error review for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 25; Action No. 8:24-CV-1036, Dkt. Nos. 30, 28.)

1   When no specific objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific

objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(C); *see, e.g., Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

**\*2** Turning to Magistrate Judge Hummel's recommendation regarding the dismissal of Plaintiff's Complaint without prejudice and with leave to amend, the Court begins by finding that, even when viewed with the utmost of special leniency, neither of Plaintiff's Objections contains a specific challenge to either Report-Recommendation other than a specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity. (Action No. 8:24-CV-0849, Dkt. No. 27; Action No. 8:24-CV-1036, Dkt. No. 30.) As a result, the remaining portions of each Report-Recommendation need be (and are) reviewed only for clear error, which the Court finds they survive for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.)

Finally, with regard to Plaintiff's specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity, the Court must review each such recommendation *de novo.*[2] After doing so, the Court finds that each recommendation survives that *de novo* review for the reasons stated in each of Defendant's Responses: Magistrate Judge Hummel employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Action No. 8:24-CV-0849, Dkt. No. 28; Action No. 8:24-CV-1036, Dkt. No. 31.) As a result, the challenged portion of each Report-Recommendation is also accepted and adopted in its entirety for the reasons stated therein. (*Id.*)

[2]    When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

To those reasons, the Court adds only that, as argued by Defendant in each of its Responses, is well established that Defendant is a state agency for the purposes of the Eleventh Amendment. *See, e.g., McMillan v. New York State Bd. of Elections*, 10-CV-2502, 2010 WL 4065434, at \*3 (E.D.N.Y. Oct. 15, 2010) ("The State Board [of Elections] is a state agency for the purposes of the Eleventh Amendment."), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (summary order); *Iwachiw v. New York City Bd. of Elections*, 217 F. Supp. 2d 374, 380 (E.D.N.Y. 2002) ("[T]he Eleventh Amendment bars the Section 1983 action against the State Board of Elections."), *aff'd, Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27 (2d Cir. 2005); *Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) ("The State Board of Elections is a state agency for the purposes of the Eleventh Amendment ....") (internal quotation marks omitted); *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity."); *Credico v. New York State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) ("[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment ....").

**ACCORDINGLY**, it is

**ORDERED** that each Report-Recommendation in the two above-captioned actions (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the two above-captioned actions are **CONSOLIDATED** pursuant to Fed. R. Civ. P. 42(a) (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036); and it is further

2024 WL 4689022

**ORDERED** that Plaintiff's Complaint in each action (Action No. 8:24-CV-0849, Dkt. No. 1; Action No. 8:24-CV-1036, Dkt. No. 1) **shall be DISMISSED** without further Order of the Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in each Report-Recommendation; and it is further

 **\*3  ORDERED** that, should Plaintiff file a timely Amended Complaint, that Amended Complaint shall be, without further Order of this Court, referred to Magistrate Judge Hummel for his review of its pleading sufficiency.

Because the Court certifies that any appeal from this Decision and Order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), the Court revokes Plaintiff's *in forma pauperis* status on any appeal from this Decision and Order.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4689022

---

**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

2024 WL 1016392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)
|
Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.[1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced.[2]

---

[1]    *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

[2]    *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023;

---

2024 WL 1016392

closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted. [3]

[3]    "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. SUFFICENCY OF THE COMPLAINT

### A. Standard of Review

**\*2** Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [4]

[4]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

2024 WL 1016392

*Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Background

**\*3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13. [5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

[5] The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee" (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car. [6] *Id.*

[6] Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

**\*4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the

defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4[th], 5[th] amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and prociuted for act's and investigate RPD misconduct." *Id.* at 4,13.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

### IV. ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### A. Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

### B. Official Capacity Claims

2024 WL 1016392

**\*5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. "A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]"). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is "being targeted" for being a "young and black mixed person of color." (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's its completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong."

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list "harassment" as a cause of action.[7] *Id.* at 13.

[7]    To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional,

2024 WL 1016392

or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

**\*6** "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

### C. Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at \*1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

### D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2

#### 1. Unlawful Search and Seizure

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

2024 WL 1016392

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

**\*7** Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint. [8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

[8]  As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See Rodriguez*, 575 U.S. at 354.

**\*8** Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. [9] *Riley v. California*, 573 U.S. 373, 382 (2014).

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 40 of 111

Gosier v. Collins, Not Reported in Fed. Supp. (2024)
2024 WL 1016392

9    In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also United States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search incident to arrest. *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [10]

10    Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles, the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

## 2. False Arrest

**\*9** "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [11]

[11]    If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

**\*10** Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The

Case 5:26-cv-00696-BKS-CBF Document 6 Filed 07/17/26 Page 42 of 111

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle.");[12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

[12] To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

**\*11** The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 43 of 111

secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g.*, *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

13    *See also supra* note 10 and accompanying text.

### E. Private Prosecution
To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such as order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F. Supplemental Jurisdiction
A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### V. OPPORTUNITY TO AMEND
**\*12** Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

2024 WL 1016392

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

[14]    Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

## VI. CHANGE OF ADDRESS

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024. [15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]    *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

## VII. CONCLUSION
 **\*13  WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

2024 WL 1016392

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1016392

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1307035

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 46 of 111

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## <u>ORDER ON REPORT & RECOMMENDATION</u>

DAVID N. HURD, United States District Judge

**\*1** On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

2024 WL 1307035

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1307035

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5891888
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrea LAPIETRA, Individually and as Power of Attorney, and Deashon Tarver, Plaintiffs,

v.

CITY OF ALBANY POLICE DEPARTMENT, et al., Defendants.

9:19-CV-1527 (TJM/TWD)

|

Signed 10/05/2020

**Attorneys and Law Firms**

ANDREA LaPIETRA, Plaintiff, pro se, 1030 Washington Ave. #2, Albany, NY 12203.

DEASHON TARVER, Plaintiff, pro se, Monte Mario Motel, Room 21, 947 New Loudon Road, Latham, NY 12110.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1** This action was commenced by two *pro se* plaintiffs, Deashon Tarver ("Tarver") and Andrea LaPietra ("LaPietra"), individually and "as Power of Attorney" for Tarver, pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Dkt. No. 1.) A complete history of this action to date can be found in the prior Decisions and Orders of this Court filed on January 15, 2020, February 26, 2020, and April 6, 2020. (*See* Dkt. Nos. 4, 11, 13.) The Court previously granted LaPietra's motion to proceed *in forma pauperis* and dismissed any claims that LaPietra asserted on behalf of Tarver. (Dkt. No. 4 at 4-5.) The Court also directed Tarver to comply with the filing fee requirements. *Id.*

On May 22, 2020, Tarver complied with the Court's directives and submitted a motion to proceed *in forma pauperis* ("IFP Application"). (Dkt. No. 20.) Upon review of Tarver's IFP application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Accordingly, the Court grants Tarver's IFP Application.

The Court shall now consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. (Dkt. No. 1.) The Court will also address Tarver's motion to appoint counsel (Dkt. No. 21) and LaPietra's motion to appoint counsel (Dkt. No. 6), which was previously held in abeyance. (*See* Dkt. No. 11.)

### II. SUFFICIENCY OF THE COMPLAINT

#### A. Standard of Review

Having found that Plaintiffs meet the financial criteria for commencing this action *in forma pauperis*, and because Plaintiffs seek relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.[1] Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

Case 5:26-cv-00696-BKS-CBF   Document 6   Filed 07/17/26   Page 49 of 111

1   Tarver was incarcerated at Mid-State Correctional Facility at the time the action was commenced. *See* http://nysdoccslookup.doccs.ny.gov (DIN 18A1582) (last visited Sept. 27, 2020). Therefore, 28 U.S.C. § 1915A is applicable. *See Rogers v. New York City Police Dep't*, No. 12 CV 3042, 2012 WL 4863161, at *1 n.3 (E.D.N.Y. Oct. 12, 2012) (a plaintiff who has been released from incarceration is still considered a prisoner under § 1915A if he was imprisoned at the time the action was commenced); *see also Brown v. Jacobson*, No. 98 Civ. 0565, 1999 WL 1125122, at *5 (S.D.N.Y. Dec. 8, 1999) (prisoner's complaint subject to heightened scrutiny under the Prison Litigation Reform Act of 1999 even after release from custody because it concerns prison officials' misconduct).

2   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**\*2**  Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure ("Federal Rules"). Rule 8 of the Federal Rules provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Fed. R. Civ. P. 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

"[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 of the Federal Rules "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco*

*v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

### B. Summary of the Complaint

**\*3** The incidents that form the foundation for the Complaint occurred on December 14, 2016, and while Tarver was confined at Albany County Correctional Facility ("Albany County C.F."). The Complaint totals 259 pages and is a rambling, disjointed mix of conclusory allegations, that is, in large part, comprised of excerpts that appear to have been cut and pasted throughout the document from legal articles, statutes, and cases. (Dkt. No. 1. [3]) Named as defendants are: City of Albany Police Department, Officer Jan Mika, Officer Adam Iannacito, Albany County C.F., CO Burns, Sgt. Remillard, Unknown Officers, Unknown Parole Officers, Unknown Plain Clothes Officer, Unknown Sgt., Unknown Correctional Officers, and Unknown Medical and Dental Workers. The following facts are set forth as alleged by Plaintiffs.

[3] The Complaint includes exhibits. (*See* Dkt. No. 1-1 through Dkt. No. 1-6.) To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

On December 14, 2016, Plaintiffs were at LaPietra's second-floor apartment located at 1030 Washington Avenue, #2, in Albany, New York. (Dkt. No. 1-1 at 5. [4]) Tarver, identified as LaPietra's "loved one" and boyfriend, was on parole supervision. *Id.* LaPietra left "to pick something up" and Tarver stayed at the apartment. *Id.* She left her apartment keys with Tarver. *Id.* On the way back to the apartment, LaPietra received a telephone call from her "case coordinator" informing her that Albany police officers were outside her apartment. *Id.*

[4] LaPietra is "part of an independent living program for a health-related reason." (Dkt. No. 1-1 at 5.) Her apartment is on the second floor.

When she returned to the apartment, Tarver "was sitting and being detained, handcuffed in the back seat of a police vehicle that was parked in front of the apartment." *Id.* [5] Tarver was "under arrest" but the police officers did not tell Tarver "what he was under arrest for" and did not read him his "Miranda" rights. *Id.* "They threatened that they were going to taser him[.]" *Id.*

[5] According to Tarver, he was "coming down the stairs, and had the door to stairwell open a crack, and he and the officer saw each other through the glass cutout window in the door to the house/vestibule. The officer pushed in on the door to the house and entered into the vestibule while [Tarver] was still in the stairwell. At some point, he asked [Tarver] what he was doing there and he said he lived there; He cuffed him, sat him down on the outside stoop, asked what was in his pocket, and he told them the keys and his wallet and they took the keys and wallet out of his pocket and immediately went in the other 2 doors without even checking on who he was, that he had a parole condition, or where he lived, which could have been easily ascertained."

LaPietra states her "apartment was open and the police" had been through the apartment and her personal belongings including "paperwork pertaining to [her] health, government paperwork, [her] garbage, and everything." *Id.* at 5, 6. LaPietra was also questioned by police officers and a sergeant. *Id.* at 6. She stated Tarver did not live with her but admitted he sometimes stayed overnight "with the permission of his PO." *Id.* LaPietra was also asked other personal questions, including "confidential" conditions of her residence program. *Id.* at 6. "They" also questioned LaPietra about "some items that were in the corner of the dining room" because "they suspected that those items were stolen." *Id.* at 7. Officer Jan Mika said to LaPietra, "oh by the way some parole officers were here earlier." *Id.* at 8-9. She thought that was a "strange comment to make at the time because it did not fit into the context of what [they] were speaking about." *Id.* at 9. [6]

6        LaPietra continues: "If there were parole officers there they were not there when I got there and they were not the ones who originally went into the apartment or conducted a search. They city officer who entered did not have a warrant to enter, but they had a witness [Tarver's] counsel later told me. If there was a witness I saw no signs of them." (Dkt. No. 1-1 at 9.) "It would have been more than reasonable to doubt anything [Tarver] said and because the officer had access to [Tarver's] wallet and had him handcuffed it would have been reasonable enough to ascertain whose residence it was, and that [Tarver] had a parole condition, to contact his parole officer, or to obtain a warrant. None of this was done." *Id.* at 9-10.

**\*4** LaPietra "was outside with the officers they asked [her] to go sit in [her] car then another officer said no stand over here to the side of the driveway." *Id.* at 7. LaPietra states she was "detained" and "questioned" for more than twenty-minutes and her apartment was searched without a warrant. *Id.* at 7, 15-6.

During the course of Tarver's arrest, he was "pushed up against a police vehicle, his earring was ripping out of his ear ... the police then threated to use a Taser on him ... and then put him on the ground." *Id.* at 101. Tarver was arrested without a warrant and charged with petty larceny. *Id.* at 7. Tarver was "arraigned judicially for a misdemeanor" and "maliciously prosecuted for a felony." *Id.* at 11. Tarver ultimately "took a plea deal." *Id.* at 13.

The Complaint states that defendant "law enforcement officers observed the illegal nature of the search and seizure of the residence and willfully ignored it and participated." *Id.* at 10. Plaintiffs claim that "fellow officers had an opportunity to intervene to prevent further harm and to report the misconduct. Yet they failed to act or intervene." *Id.* The Complaint further claims the Sergeant of the Albany Police Department "participated" in Tarver's arrest, was responsible for the supervision of the defendant police officers, failed to intervene and prevent the ongoing misconduct of the officers, "which resulted in the arrest and prosecution" of Tarver. *Id.* at 10-11.[7]

7        The complaint further states that "They also called and invited parole officers to the scene to illegally search the residence as well. Someone is responsible for the arrival of officers in plain clothes and parole officers who also illegally searched the residence." (Dkt. No. 1-1 at 11.)

Later that night, "they" took Tarver from the police station to the emergency room at Albany Medical Center "because he tried to hurt himself." *Id.* at 92. Tarver's hands and feet were shackled. *Id.* at 92-93. At the emergency room, Tarver was denied his right civil rights to use the bathroom and was subjected to excessive force. *Id.* Although Tarver was permitted to use the bathroom at least once while at the emergency room, which "went well," when it "came time for him to go to the bathroom again ... the police said no." *Id.* Tarver became "emotionally upset and swore" and "stood up." *Id.* "They tackled him to try and force him to lay down onto the hospital bed." *Id.* "Then they shot him with Benadryl." *Id.* "An officer in the process of tackling him fractured his pinky finger. Then they turned around and charged [Tarver] with Felony Assault on an Officer." *Id.* But Tarver had "no intention to either interfere with or assault an officer nor did he assault the officer." *Id.* The use of force aggravated Tarver's preexisting "AC separation." (Dkt. No. 1-1 at 5.)

Tarver was confined at Albany County C.F. from December 2016 until April 2018. During his confinement, Tarver did not receive proper medical care for "an AC separation." (Dkt. No. 1-1 at 3-4, 85, 89.) Although x-rays were taken of Tarver's shoulder, he was told by "a doctor" that, "[w]e don't do surgery here." *Id.* at 85, 126; Dkt. No. 1-6 at 27. Tarver received no other treatment or care for his shoulder complaints and his requests for an MRI and a visit with his personal physician were denied. (Dkt. No. 1-1 at 136; Dkt. No. 1-6 at 27.)

**\*5** During his confinement at Albany County C.F., Tarver, who suffers from "Schizo Affective Disorder," depression, and PTSD, received seven different types of psychiatric medicine that were not administered "as scheduled." (Dkt. No. 1-1 at 3, 124; Dkt. No. 1-6 at 73.) Tarver was not provided with trauma therapy or a social worker. (Dkt. No. 1-1 at 136.)

From October 2017 until April 2018, Tarver was denied adequate dental care for "extreme pain" that impacted his daily activities. (Dkt. No. 1-1 at 4, 124; Dkt. No. 1-6 at 24.) Tarver submitted numerous medical call slips and waited "months" to see a dentist.

2020 WL 5891888

(Dkt. No. 1-1 at 124; Dkt. No. 1-6 at 22, 24.) When he finally saw a nurse in late October 2017, the nurse informed him that he would "see the dentist in five days" and gave him Motrin for his pain. (Dkt. No. 1-1 at 126; Dkt. No. 1-6 at 22-23.) When Tarver saw the dentist, he was told that there was an "issue with his wisdom teeth and a filling in another tooth" but the dentist "did nothing." (Dkt. No. 1-1 at 126.) In November 2017, Tarver was given Amoxycillin, however, the facility records do not indicate that he suffered from decay or infection. *Id.* Tarver continued to suffer from pain and was told, "we don't do root canals here." *Id.* at 24; Dkt. No. 1-1 at 126. As a result, Tarver had a "tooth fall straight out of his mouth" while at Albany County C.F. (Dkt. No. 1-1 at 126; Dkt. No. 1-6 at 6, 23.)

Tarver also claims that his weight, blood sugar, and sleep apnea were not properly monitored at the facility. (Dkt. No. 1-1 at 129; Dkt. No. 1-6 at 7, 27.)

On October 23, 2017, LaPietra wrote to Melanie Trimble ("Trimble") at the Capital Region ACLU, to complain about Tarver's medical and dental care. (Dkt. No. 1-1 at 125.) Trimble relayed LaPietra's concerns to Michael Lyons ("Lyons"), who was surprised that there was a dentist at Albany County C.F. *Id.* LaPietra also called the Sheriff's Office and spoke to Mr. Newman ("Newman"). *Id.* Newman told LaPietra to speak with a sergeant or superintendent during a visit with Tarver, but that the sergeant "can't do anything." *Id.* In December 2017, LaPietra wrote to the Commission of Correction and Inspector General's office to complain about Tarver's medical and dental care. *Id.* at 119-20. The Commission responded to Tarver and instructed him to file a grievance. *Id.* at 126-27.

On March 9, 2018, Tarver received a letter from Prisoner Legal Services "about his rights." (Dkt. No. 1-1 at 4; Dkt. No. 1-6 at 1, 25.) On March 13, 2018, one day after LaPietra filed "papers for this case in the Supreme Court Clerk's office," Tarver was assaulted by defendant C.O. Burns. *Id.* The assault occurred while another officer was performing "a squat and cough" of Tarver in his cell. *Id.* Burns willfully entered Tarver's cell "for the purposes of assault[.]" (Dkt. No. 1-1 at 148-52; Dkt. No. 1-6 at 25-26.) Burns told Tarver that he was not "coughing properly," pushed him onto the bed, punched him in the face, and sprayed him with mace. *Id.* At the time of the assault, Tarver was naked and in a squat position, with his back facing the officers. *Id.* Defendant Sgt. Remillard was present during the assault and did not intervene on Tarver's behalf. *Id.* Tarver was taken to the nurse so that his eyes could be flushed. (Dkt. No. 1-1 at 148-152; Dkt. No. 1-6 at 25-26.) As a result of being sprayed with mace, his face was swollen and his eyes were "red and bloodshot." (Dkt. No. 1-6 at 25-26.)

 **\*6** After the incident, Tarver was placed in "lockdown" without any writing utensils, legal materials, or mail. (Dkt. No. 1-1 at 129, 143; Dkt. No. 1-6 at 26-27.) The "charges" surrounding his lockdown were not properly or timely presented to him, he was not provided with an assistant related to the disciplinary charges, and he was terminated from his job. (Dkt. No. 1-1 at 164-66; Dkt. No. 1-6 at 26-27.) Tarver's property, including letters and books, were confiscated. (Dkt. No. 1-1 at 174, 178.) Tarver was also denied any outdoor or recreational time. *Id.* at 168.

In March 2018, LaPietra visited Tarver. (Dkt. No. 1-1 at 156.) At that time, Burns was "laughing" about the assault and told LaPietra that Tarver was a "bad boy," who hadn't coughed for him. *Id.* LaPietra telephoned the Commission of Corrections to report the assault and mailed a letter on April 2, 2018, to officially complain about the assault, Tarver's inability to file grievances, and mail tampering. *Id.* at 162.

On May 3, 2018, LaPietra called the Commission of Corrections, spoke to Debbie Clark ("Clark") and reported the March 2018 assault. *Id.* at 179. Clark would not share any information with LaPietra. *Id.*

During his confinement at Albany County C.F., Tarver was "blocked from and denied grievance[s]" related to medical and dental care and "solitary confinement in relation to his assault." (Dkt. No. 1 at 2; Dkt. No. 1-1 at 127-128, 141 150; Dkt. No. 1-6 at 27.) The facility also "interfered" with his legal mail. (Dkt. No. 1-1 at 123-24, 144.) For example, Tarver sent a letter to "Judge Keefe," a "consultant" with the Center for Law and Justice. *Id.* Tarver marked the envelope "Attorney Mail" and placed an address on it. *Id.* at 122-23. The mail did not reach the intended recipient and "may have affected his rights to bring a claim

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 53 of 111

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 5891888

against the municipality in a timely manner." *Id.* at 123-24. Tarver was released from "solitary" in April 2018 and transferred to Downstate Correctional Facility, shortly thereafter. *Id.* at 129.

LaPietra alleges that Albany County C.F. would not allow her to wear "a Native American necklace into the facility" in violation of her First Amendment rights. (Dkt. No. 1-1 at 190-193.)

Construing the Complaint liberally, Tarver asserts the following: (1) Fourth Amendment claims for unreasonable search and seizure, false arrest, excessive force, and malicious prosecution; (2) Fourteenth Amendment claims for excessive force, failure-to-protect, and conditions of confinement; (3) First Amendment retaliation claims; (5) Fourteenth Amendment claims related to his medical and dental care; (6) Fourteenth Amendment due process claims; (7) First Amendment access to court and mail interference claims; (8) constitutional claims related to the grievance process; (9) Fourteenth Amendment equal protection claims; (10) Sixth Amendment claims related to the right to counsel; (11) state law claims; and (12) claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (*See* Dkt. No. 1-1 at 5, 10, 11, 17, 88, 96, 97, 102, 105, 113, 127, 128, 146, 152; 164, 172, 182; Dkt. No. 1-6 at 21-27.) LaPietra asserts the following: (1) Fourth Amendment claims for unreasonable search and seizure and false arrest; (2) state law claims; and (3) First Amendment freedom of religion claim. (*See* Dkt. No. 1-1 at 5, 10, 11, 17, 88, 190-193.)

Plaintiffs seek unspecified injunctive relief, monetary damages, and an order allowing them to file a late notice of claim in state court. (Dkt. No. 1 at 6; Dkt. No. 1-1 at 3, 184-85, 1-6 at 1-2. [8]) For a more complete statement of Plaintiffs' claims, reference is made to the Complaint.

[8]    While not entirely clear, it appears Plaintiffs filed a "late notice of claim in regard to the Albany Police and Albany County Correctional Facility violating [their] civil rights," as alleged in Complaint but State Court Judge Hon. Kimberly A. O'Conner "denied" that request. (Dkt. No. 1-6 at 1.) The Court notes, however, "New York's General Municipal Law has only vested the power to grant notice of claim extensions to the New York State supreme courts and county courts." *Farquharson v. Lafayette*, No. 19-cv-3446 (NSR), 2020 WL 1699985, at *13 (S.D.N.Y. Apr. 7, 2020) (citing N.Y. Gen. Mun. Law § 50-e(7)). Thus, "[f]ederal courts are not authorized to grant such extensions." *Id.* (citing *Davis v. City of New York*, No. 12 Civ. 3297 (PGG), 2018 WL 10070540, at *13 (S.D.N.Y. Mar. 30, 2018) ("New York has given the power to extend deadlines for serving [a] notice of claim to state supreme courts and county courts, and federal courts are not authorized to grant such extensions."); *Dayton v. City of Middletown*, 786 F. Supp. 2d 809, 824-25 (S.D.N.Y. 2011) ("[T]his Court lacks jurisdiction, pursuant to § 50-e(7), to deem Plaintiffs' 5/30/09 Amended Notice of Claim for their state law claims against Orange County timely filed, or to grant an extension of time to file a late notice of claim."). The Court further notes that to the extent Plaintiffs seek to collaterally attack a state court's judgment rendered before filing this action in federal court, such claims may be barred under *Rooker-Feldman* doctrine, which divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *See generally District of Colombia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

## C. Nature of Action

**\*7**  Plaintiffs seek relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272 (TJM), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Thus, to state a cognizable claim under Section 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has

deprived [the plaintiff] of that right acted under color of state law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

The Court will construe the allegations in the Complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

## III. ANALYSIS

### A. City of Albany Police Department

The caption of the Complaint lists the City of Albany Police Department as a defendant. (Dkt. No. 1 at 1.) "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing § 1983 claim brought against the Lynbrook Police Department); *see also La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

However, in deference to Plaintiffs' *pro se* status, the Court will construe Plaintiffs' claims as if they had been brought against the City of Albany, the real party in interest. *See Solis v. Cty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest).

Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection – an affirmative link–between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).

**\*8** Here, Plaintiffs have failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of the City of Albany authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including unreasonable search and seizure, false arrest, and excessive force incidents or any affirmative link between such a policy and defendants' alleged actions with regard to Plaintiffs. (*See* generally Dkt. No. 1.) Furthermore, Plaintiffs' conclusory allegations that the City of Albany failed to train and supervise defendants, *see id.*, without supporting factual allegations, fails to state a *Monell* claim against the City of Albany that is plausible on its face. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation.").

Based upon the foregoing, the Court recommends that Plaintiffs' claims under 42 U.S.C. § 1983 against City of Albany Police Department be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

2020 WL 5891888

Moreover, notwithstanding a very liberal interpretation of the Complaint, to the extent that Plaintiffs' claims could be construed to be asserted against the City of Albany, as the real party in interest, it is recommended that the claims be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### B. Officer Jan Mika

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

Here, the Complaint states that Officer Jan Mika asked LaPietra questions on December 14, 2016, such as her "name, address, date of birth, etc." and also told her, "Oh by the way parole officers were here earlier." (Dkt. No. 1-1 at 10, 46.) However, Plaintiffs do not plead any facts sufficient to plausibly suggest that this defendant was personally involved in any conduct that violated either of Plaintiffs' constitutional rights and, therefore, the Complaint fails to state a cognizable claim against this defendant. *See Cipriani v. Buffardi*, No. 06-CV-0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted).

Accordingly, it is recommended that Plaintiffs' claims against Officer Jan Mika be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### C. Unknown Officers, Unknown Parole Officers, Unknown Plain Clothes Officer, Unknown Sgt.

Separate from the substantive personal involvement requirement, discussed above, is a pleading requirement that, to adequately state a claim, a plaintiff's complaint must "differentiate which defendant[s] w[ere] involved in [what] unlawful conduct." *Ying Li v. City of New York*, No. 15-CV-1599, 2017 WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017); *see also Wright v. Orleans Cty.*, No. 14-CV-622, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (noting in a § 1983 case that "[g]roup pleading is insufficient for purposes of Rule 8(a)(2), which requires a short and plain statement of the claim showing that the pleader is entitled to relief" (citation and quotation marks omitted)); *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *7, *22 (S.D.N.Y. Jan. 27, 2012) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").

**\*9** To satisfy the personal involvement requirement and the rule against group pleading, it is not necessary for a plaintiff to know the name of the defendant. Where a plaintiff does not know the name of a defendant, the plaintiff may identify the defendant in the pleading as John or Jane Doe. However, the pleading must still satisfy the rules governing personal involvement and group pleading as to the John or Jane Doe defendant. *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 493-94 (S.D.N.Y. 2014) (dismissing without prejudice excessive force claim asserted against "members of the 'Special Search Team' and 'ESU Officers' " and noting that, "[t]o the extent that [plaintiff] does not know the names of the members of the Special Search Team or ESU Officers involved, he may name 'John Doe' defendants and include as much identifying information as he has knowledge of, for the purpose of filing an amended complaint, should [he] chose to do so"); *Williams v. 120 PCT Undercover*, No. 11-CV-4690, 2011 WL 13128209, at *1 (E.D.N.Y. Oct. 18, 2011) (dismissing complaint without prejudice where plaintiff's claims provided information about the alleged constitutional deprivations, but were brought against "the 120 Precinct and District 9, a police precinct and district of the New York City Police Department").

Here, Plaintiffs simply list different groups of unidentified defendants in the caption of the Complaint and generally allege that on December 16, 2014, their Fourth Amendment constitutional rights were violated. The use of the terms "they," or "the police"

or "officer" as a name for alleged defendants is not adequate to state a claim against a "person" as required in § 1983 actions. *See Williams*, 2011 WL 13128209, at *1 (dismissing complaint with leave to amend where the "[p]laintiff alleges that unnamed undercover police officers used excessive force against him and caused him to sustain injuries on August 26, 2008 but does not identify any particular defendants."). [9]

[9]  *See Williams*, 2011 WL 13128209, at *1 (giving the plaintiff leave to file an amended complaint to name the individuals responsible for the alleged deprivation of his rights and noting if "if plaintiff cannot identify the individual defendant(s) within the time allowed in this order or because they were undercover, he may designate the individual as John (or Jane) Doe #1, and so on.").

Moreover, if the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory officials may be considered "personally involved" if they (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Based on the foregoing, the Court finds Plaintiffs have failed to adequately plead that any individual defendant was personally involved in any alleged wrongdoing on December 14, 2016, and has contravened the rule against group pleading. Therefore, the Court recommends dismissing Plaintiffs' claims against these "Unknown" defendants without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [10]

[10]  Inasmuch as the Court is recommending dismissal of Plaintiffs' Fourth Amendment claims without prejudice, the Court does not address the merits, timeliness, and/or whether any such claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

### D. Officer Adam Iannacito

**\*10**  Tarver claims Iannacito used "excessive force on" him on December 14, 2016, in the Emergency Room by, *inter alia*, by "tackling" Tarver while he was restrained in shackles and prevented him from using the bathroom in violation of his constitutional rights, "which worsened [Tarver's] injury from a prior workplace assault, which was an AC separation." (Dkt. No. 1-1 at 96-113, Dkt. No. 1-6 at 5-6, 20-21.) It appears that during the assault, Iannacito fractured a finger and thereafter "maliciously prosecuted [Tarver] with felony assault on an officer." *Id.*

To the extent Tarver asserts these claims under Section 1983, such claims are time-barred. Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on initial review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint). The applicable statute of limitations for a Section 1983 action is governed by "the law of the state in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New York, the general statute of limitations for personal injury claims is three years. *See* N.Y. C.P.L.R. § 214(5).

Here, Tarver executed the Complaint on February 6, 2020. (*See* Dkt. No. 7.) The alleged assault and deprivations by Iannacito at the Emergency Room occurred on December 16, 2016. Accordingly, Tarver's Section 1983 claims against Iannacito are barred by the applicable statute of limitations.

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 5891888

To the extent these claims are asserted under New York law, claims for intentional torts, such as assault and battery, and intentional infliction of emotional distress, are governed by a one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery ... must be brought within one year from the date the claim accrued."); *see also Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 957 F. Supp. 450, 455 (S.D.N.Y. 1997) ("It is well established under New York law that a claim of intentional infliction of emotional distress has a one–year statute of limitations."). Accordingly, Tarver's claims against Iannacito, asserted under state law, are also barred by the applicable statute of limitations.

Therefore, the Court recommends dismissing Tarver's claims against Officer Adam Iannacito without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). Because a district court typically should not dismiss a claim as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered, if Tarver files an amended pleading with claims asserted against this defendant arising from the alleged December 14, 2016, incidents, he should address the issue of timeliness. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

### E. Albany County C.F.

The caption of the Complaint lists Albany County C.F. as a defendant. (Dkt. No. 1.) However, as set forth above, because the Albany County C.F. is an administrative arm of Albany County, without a legal identity separate and apart from the County, it lacks the capacity to be sued. *See* Part III.A., *supra.*; *see also Lukes v. Nassau Cty. Jail*, No. 12-CV-1139, 2012 WL 1965663, at *2 (E.D.N.Y. May 29, 2012) (dismissing claims against defendant Nassau County Jail because it "is an administrative arm of Nassau County, without a legal identity separate and apart from the County"); *see Solis v. Cty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10,1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest);

**\*11** Based upon the foregoing, the Court recommends that Plaintiffs' claims under 42 U.S.C. § 1983 against Albany County C.F. be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

Nevertheless, in deference to Plaintiffs' *pro se* status, the Court will construe Plaintiffs' claims as if they had been brought against Albany County, the real party in interest. *See Shabazz v. Johnson City Police Dep't*, No. 3:18-CV-0570 (MAD/DEP), 2018 WL 5660406, at * (June 21, 2018) (reviewing complaint against the real party in interest).

As discussed above, municipal liability is limited under Section 1983 by *Monell*. *See* Part III.A., *supra.*

Here, with one minor exception discussed below, Plaintiffs have failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of Albany County authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including deliberate medical indifference and excessive force incidents or any affirmative link between such a policy and any defendants' alleged actions with regard to Tarver. *See* Dkt. No. 1-1 at 146-147. *See Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (*Monell* claim requires "factual allegations that would support a plausible inference that the County[ ]'s 'policies' or 'customs' caused ... violations ... of rights."). Furthermore, Plaintiffs' conclusory allegations that Albany County failed to train and supervise defendants, *see id.*, without supporting factual allegations, fails to state a *Monell* claim against Albany County that is plausible on its face. *See Tuttle*, 471 U.S. at 824 n.8.

The Complaint states that "[t]he Albany County [C.F.] refused to allow [LaPietra] to wear a Native American necklace into the facility at a visitation stating that it is not a religion recognized by the United States government and that it had to be a religion like Christianity or the Muslim religion. This is a First Amendment rights violation. It is also inherently false that it is not a form of religion recognized by the United States government because the United States recognizes Natives through the American Indian Religious Freedom Act." (Dkt. No. 1-1 at 190.) Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), LaPietra has sufficiently plead, albeit thinly, a cognizable claim regarding the aforementioned policy at Albany County C.F.

Accordingly, based upon a very liberal interpretation of the Complaint, to the extent that Plaintiffs' claims could be construed to be asserted against Albany County as the real party in interest, it is recommended that only LaPietra's First Amendment *Monell* claim survives initial review and requires a response and that all other claims be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. The Court expresses no opinion as to whether LaPietra's First Amendment *Monell* claim can withstand a properly filed motion to dismiss or for summary judgment.

### F. Fourteenth Amendment Excessive Force and Failure-to-Protect Claims Against Burns and Remillard

**\*12** Tarver contends Burns assaulted him and that Remillard failed to intervene to protect him from harm at Albany County C.F. in March 2018. *See generally* Dkt. No. 1-1. In the context of excessive force and failure-to-protect claims asserted by pretrial detainees, the Supreme Court distinguished between Eighth and Fourteenth Amendment claims in holding that a pretrial detainee alleging that an officer used excessive force against him in violation of the Fourteenth Amendment need not demonstrate that such officer was subjectively aware that his use of force was unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *see also Francis v. City of New York*, No. 17-CIV-1453, 2018 WL 4659478, at \*4 (S.D.N.Y. Aug. 21, 2018) (applying *Kingsley* to failure-to-protect claim). [11] "[A] pretrial detainee must only show that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim." *Kingsley*, 576 U.S. at 397. "[I]f the use of force is deliberate – i.e., purposeful and knowing – the pretrial detainee's claim may proceed." *Id.* Courts consider a number of factors when determining objective reasonableness, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

[11]   It is unclear whether Tarver was a pretrial detainee or was serving a sentence at the time of the events complained of in the complaint. For purposes of this initial review, the Court assumes that Tarver was a pretrial detainee when his claims arose.

Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff*, 537 F.3d at 191, Tarver has sufficiently plead Fourteenth Amendment excessive force and failure-to-protect claims against Burns and Remillard.

Therefore, the Court recommends that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against Burns and Remillard survive *sua sponte* review and require a response. The Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### G. Assault and Battery Claims Against Burns

Tarver also asserts assault and battery claims against Burns. To the extent that Tarver asserts these claims under Section 1983, it is duplicative of his excessive force claim and must be dismissed for failure to state a claim upon which relief may be granted. *See Raymond v. Bunch*, 136 F. Supp. 2d 71, 81 (N.D.N.Y. 2001). To the extent these claims are asserted under New York law, as discussed above, claims for intentional torts are governed by a one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery ... must

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

be brought within one year from the date the claim accrued."). As discussed above, although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on initial review. *See Pino*, 49 F.3d at 53.

Here, Tarver executed the Complaint on February 6, 2020. (*See* Dkt. No. 7.) The alleged assault by Burns occurred in March 2018. Accordingly, Tarver's assault and battery claims, asserted under state law, are barred by the applicable statute of limitations.

Therefore, the Court recommends dismissing Tarver's assault and battery claims with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). Because a district court typically should not dismiss a claim as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered, if Tarver files an amended pleading with a claim for assault and battery, he should address the issue of timeliness. *See Abbas*, 480 F.3d at 640.

### H. First Amendment Retaliation Claims Against Burns and Remillard

**\*13**  Tarver claims that Burns and Remillard acted with retaliatory intent when they assaulted him because he received legal mail and filed a state court lawsuit. (*See generally* Dkt. No. 1-1.) Retaliation claims find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). In a prison setting, prison officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *Id.* at 381-83. However, as the Second Circuit has repeatedly cautioned, such claims are easily incanted and prone to abuse, as inmates often attribute adverse actions to retaliatory animus. *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Courts must therefore approach retaliation claims with "skepticism and particular care." *Id.* Accordingly, claims of retaliation must be supported by specific facts; conclusory statements are not sufficient. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds by Swierkiewicz*, 534 U.S. at 506.

To establish a *prima facie* First Amendment retaliation claim, the plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill*, 389 F.3d at 380 (citing *Dawes*, 239 F.3d at 492).

The filing of lawsuits and grievances is protected conduct for purposes of First Amendment retaliation claims. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Therefore, the allegations in the Complaint plausibly suggest that Tarver was engaged in protected conduct. Moreover, the alleged assault constituted an "adverse action" against Tarver that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *See Rivera v. Goord*, 119 F. Supp. 2d 327, 339-340 (S.D.N.Y. 2000).

An inmate bears the burden of showing "the protected conduct was a substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Graham*, 89 F.3d at 79. In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* A showing of temporal proximity, without more, has generally been found insufficient to survive summary judgment. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (citations omitted).

Here, Tarver has not adequately stated a claim for retaliation against Burns and Remillard because he has not alleged facts to suggest that they were aware Tarver received a letter from Prisoner Legal Services or that LaPietra filed a lawsuit in state court. Moreover, there is no allegation that Burns or Remillard were defendants in that lawsuit. As a result, Tarver has failed to allege plausibly that the lawsuit was causally connected to Burns' or Remillard's allegedly adverse actions. *See Wilson v. Kelly*, No. 9:11-CV-00030 (MAD/RFT), 2012 WL 3704996, at \*9 (N.D.N.Y. Aug. 27, 2012) (claim dismissed due to failure by plaintiff

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 5891888

to allege plausibly that protected activity was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity).

**\*14** Therefore, the Court recommends that Tarver's retaliation claims against Burns and Remillard be dismissed with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).

### I. ADA Claims [12]

[12]      Tarver does not specify what portions of the ADA are triggered. Reading the complaint liberally, it appears that he brings this action under Title II.

Tarver claims that, as a prisoner with a mental illness, he was entitled to modifications of his conditions of confinement in the SHU. (Dkt. No. 1-1 at 170.) Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA is applicable to inmates in state correctional facilities. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). "Under Title II of the ADA ... prison officials may not discriminate against inmates on the basis of disability in administering work programs." *Harrington v. Vadlamudi*, No. 9:13-CV-795 (BKS/RFT), 2015 WL 4460994, at \*3 (N.D.N.Y. July 21, 2015) (citations omitted). To successfully plead a Title II claim, "[t]he inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity." *Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005).

Here, the Complaint does not clearly indicate who Tarver is suing for violations of his rights under the ADA and what relief, if any, he seeks with respect to that claim. Assuming Tarver asserts this claim against individual officers, he has not indicated whether those officers are sued in their individual capacity, official capacity, or both. (*See generally* Dkt. No. 1.) To the extent that Tarver seeks monetary damages against any defendant, in his or her individual capacity, the Second Circuit has held Title II of the ADA does not provide for individual capacity suits for monetary damages. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). While individuals may be sued under the ADA in their official capacities, a plaintiff must plead that the defendant "was motivated by discriminatory animus or ill-will based on the plaintiff's disability." *See Keitt v. New York City*, 882 F. Supp. 2d 412, 455-57 (S.D.N.Y. 2011) (holding that under *Garcia*, claims for money damages against state officials in their official capacities under Title II of the ADA are barred by the Eleventh Amendment, absent a showing that a violation was motivated by discriminatory animus or ill will due to the disability) (citing *Garcia*, 280 F.3d at 112).

Even assuming Tarver was disabled under the ADA, the Complaint fails to state a viable cause of action against any individual defendant because Tarver does not allege facts to plausibly suggest that any defendant discriminated against him. *See Wenger v. New York State Dep't of Health*, No. 5:14-CV-885 (DNH/TWD), 2015 WL 3397958, at \*5 (N.D.N.Y. May 26, 2015) (dismissing the discrimination claim under ADA where the complaint "provide[d] few specifics regarding [the plaintiff's] care, the services of which he was allegedly deprived, or programs in which he was allegedly not allowed to participate, or any reasons therefor articulated by [the defendants").

**\*15** Although "Title II [...] suits for prospective injunctive relief may ... proceed against individual officers in their official capacity," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), an inmate's request for injunctive relief becomes moot when the inmate is released from custody. *See Roque v. Armstrong*, 392 F. Supp. 2d 382, 386-87 (D. Conn. 2005) (finding that the plaintiff's request for injunctive relief under the ADA for the provision of medical care became moot when he was discharged from prison) (citations omitted); *see also McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement). In April 2020, Tarver notified the Court that he was no longer incarcerated. (*See* Dkt. No. 15.)

Accordingly, the Court recommends dismissing Tarver's ADA claims for monetary damages and injunctive relief for failure to state a claim upon which relief may be granted.

2020 WL 5891888

### J. Remaining Claims

The remaining constitutional and state law claims are asserted by Tarver against "Unknown Corrections Officers," and "Unknown Medical and Dental Workers." (*See* Dkt. No. 1 at 1; Dkt. No. 1-1 at 1.)

The Complaint fails to identify any corrections officers or medical personnel involved in Tarver's medical treatment, dental treatment, the decision to confine Tarver to keeplock, decisions related to Tarver's mail or property, decisions related to grievances or visitors at the facility, or any of other remaining alleged constitutional violations. As previously discussed, the use of the terms, "they," "corrections officers," "medical and dental workers," or "all facility employees" as a name for alleged defendants is not adequate to state a claim against a "person" as required in Section 1983 actions. *See* Part.III.C., *supra*.; *see also Ferguson*, 1991 WL 115759, at *1 ("The allegations plaintiff makes against the Otisville Correctional Facility Medical Staff are not sufficient to state a cause of action."). Moreover, the Court notes that while the Complaint includes a plethora of constitutional claims arising from Tarver's confinement at Albany County C.F., the pleading lacks any specificity related to those claims including dates, times, and locations of the alleged violations.

Because the Complaint fail to identify any individuals personally involved in the remaining alleged constitutional violations and state law claims, the Court recommends dismissing the remaining claims without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Martin v. UConn Health Care*, No. 3:99-CV-2158, 2000 WL 303262, at *1 (D. Conn. Feb. 9, 2000) (giving the plaintiff leave to file an amended complaint "provided he can identify at least one physician or other health care provider who has been deliberately indifferent to his medical needs") (citing *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34 (2d Cir. 1996) (permitting plaintiff to file amended complaint where inmate named only correctional facility and was not aware of the requirement that he name individuals)). [13]

13      Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims"). "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *see also Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("The plaintiff refers to John Doe/Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in the body of the amended complaint. Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint. Because the John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them."). In this instance, while LaPietra claims that she notified certain individuals about "the issues" at Albany County C.F., including Newman, Lyons, and Trimble, *see* Dkt. No. 1-1 at 136, 139; Dkt. No. 1-6 at 22, the aforementioned individuals are not identified as defendants in the caption of the complaint or the list of parties. Thus, the Court will not construe the complaint to include any claims or causes of action against these individuals. For the same reason, the Court will not construe the complaint to include any claims or cause of actions against other private individuals referenced in the body of the complaint, including attorneys and grocery store employees, as they are not identified as defendants in the caption of the complaint or list of parties.

## IV. MOTIONS TO APPOINT COUNSEL

**\*16** It is well-settled that there is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 62 of 111

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 5891888

preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990). Among these are

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61. None of these factors are controlling, however, and each case should be decided on its own facts. *Id.*

Here, the main facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of Plaintiffs' Complaint wherein they state the facts surrounding their claims. Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to his or her claims, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of *pro bono* counsel. *See Harmon v. Runyon*, No. 96-CV-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

Furthermore, even if the Court were to assume that this case may be of substance, these claims do not present overly complex issues. In addition, the record currently before the Court indicates that Plaintiffs have an ability to investigate pertinent facts and present the case. While it is possible, should this case proceed to a trial, that there will be conflicting evidence implicating the need for cross-examination, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Further, if this case proceeds to trial, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. This Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

For all of these reasons, the Court finds that appointment of counsel is unwarranted and Plaintiffs' motions are denied without prejudice. (Dkt. Nos. 6, 21.) Plaintiffs may file another motion for appointment of counsel in the event that they can demonstrate that, in light of specific changed circumstances, consideration of the above factors warrants granting the application.

**\*17  WHEREFORE**, it is hereby

**ORDERED** that Tarver's IFP Application (Dkt. No. 20) is **GRANTED**;[14] and it is further

14    Tarver should note that, although the Court has granted his IFP Application, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiffs' claims against City of Albany Police Department and Albany County Corrections Facility be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the Clerk be directed to revise the docket sheet to **ADD** Albany County as a defendant in this action; and it is further

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

**RECOMMENDED** that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against C.O. Burns and Sgt. Remillard **SURVIVE** initial review and require a response; and it is further

**RECOMMENDED** that LaPietra's First Amendment *Monell* claim against Albany County **SURVIVES** initial review and requires a response; and it is further

**RECOMMENDED** that the remaining claims be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** [15] pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

[15]     If the District Court approves this Report-Recommendation, and if Plaintiffs choose to file an amended complaint, any amended complaint must comply with Rules 8 and 10 of the Federal Rules. Any such amended complaint must be signed by both Plaintiffs and clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass*, 790 F.2d at 263. Any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiffs must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiffs are also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his or her address; their failure to do so may result in the dismissal of the action**; and it is further

 **\*18**  **ORDERED** that Plaintiffs' motions for counsel (Dkt. Nos. 6, 21) are **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Plaintiffs, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [16] Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>. *Roldan v. Racette*, 984 F.2d 85, 87 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 64 of 111

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 5891888

period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5891888

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 65 of 111
LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 7021589

2020 WL 7021589
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrea LAPIETRA, Individually and as Power of Attorney, and Deashon Tarver, Plaintiffs,

v.

CITY OF ALBANY POLICE DEPARTMENT, et al., Defendants.

9:19-CV-1527
|
Signed 11/30/2020

**Attorneys and Law Firms**

Andrea LaPietra, Albany, NY, pro se.

Deashon Tarver, Albany, NY, pro se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1**  This *pro se* action was referred to the Hon. Thérèse W. Dancks, United States Magistrate Judge, to review Tarver's *in forma pauperis* application [1]  and for an initial review of the Complaint pursuant to 28 U.S.C. § 1915(e). Judge Dancks issued a Report-Recommendation and Order on October 5, 2020. Dkt. No. 24. On October 16, 2020, plaintiffs requested an extension of time to file objections, citing a delay in receipt of the Report-Recommendation and Order, limited resources due to the coronavirus pandemic, the restriction on library access because of the coronavirus pandemic, a death in the family of one of the plaintiffs, and because the plaintiffs were intending to seek the help of an attorney regarding their objections. This application was granted by Judge Dancks on October 19, 2020, and plaintiffs were given until November 19 2020 to file their objections. On November 19, 2020, plaintiffs filed a letter with the Court requesting an additional 2-3 week extension to file objections, citing that they were intending to consult with a specified attorney and because they intended to obtain information from Tarver's doctor that they wanted to incorporate in their objections. Plaintiffs' request for an additional extension of time to file objections is denied. They have failed to demonstrate good cause for an additional extension of time. Further, Plaintiffs will suffer no prejudice by the denial of this request because Judge Dancks recommends that certain claims be allowed to proceed, that others be dismissed without prejudice and with leave to replead, and that plaintiffs' motion for appointment of counsel (which may now be moot) be denied with leave to renew. While Judge Dancks recommends that claims against the Albany Police Department and the Albany County Corrections Facility be dismissed with prejudice, she also recommends that these claims be allowed to proceed against the real parties in interest, the City of Albany and Albany County, respectively. In this regard, Judge Dancks recommends that the claims against the Albany Police Department be allowed to be repled against the City of Albany, and that the County of Albany be added to the docket as the real party in interest in the claims against the Albany County Corrections Facility.

[1]    The Court previously granted LaPietra's motion to proceed *in forma pauperis* and dismissed any claims that LaPietra asserted on behalf of Tarver. (Dkt. No. 4 at 4-5.)

Because plaintiffs expressed an intention to file objections but waited until the last day to request an extension, the Court will deem them to have filed a general objection and will review Judge Dancks's recommendations accordingly.

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 66 of 111

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 7021589

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

 **\*2**  After conducting a *de novo* review of the issues addressed by Judge Dancks in her Report-Recommendation and Order, the Court adopts the recommendations for the reasons stated in Judge Dancks's thorough report.

## IV. CONCLUSION

For the reasons discussed above, plaintiffs' letter motion for an extension of time to file objections to the Report-Recommendation and Order (Dkt. No. 31) is **DENIED**. Further, the Court **ACCEPTS** and **ADOPTS** Judge Dancks's recommendations in the Report-Recommendation and Order (Dkt No. 24). Therefore, it is hereby

**ORDERED** that plaintiffs' claims against City of Albany Police Department and Albany County Corrections Facility are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk is directed to revise the docket sheet to **ADD** Albany County as a defendant in this action; and it is further

**ORDERED** that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against C.O. Burns and Sgt. Remillard **SURVIVE** initial review and require a response; and it is further

**ORDERED** that LaPietra's First Amendment *Monell* claim against Albany County **SURVIVES** initial review and requires a response; and it is further

**ORDERED** that the remaining claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

If plaintiffs choose to file an amended complaint, any amended complaint must comply with Rules 8 and 10 of the Federal Rules. Any such amended complaint must be signed by both plaintiffs and clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. Any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.

If plaintiffs intend to file an amended complaint they must do so within thirty (30) days of the date of this Decision and Order. If they fail to timely do so, the case will proceed on the remaining claims in the Complaint.

The Clerk can terminate all defendants EXCEPT Albany County, C.O. Burns, and Sgt. Remillard.

**IT IS SO ORDERED.**

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 67 of 111

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 7021589

**All Citations**

Not Reported in Fed. Supp., 2020 WL 7021589

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3144207
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott RUMMLER, Plaintiff,
v.
JEFFERSON COUNTY EMERGENCY MEDICAL SERVICE, Defendant.

5:25-cv-1062 (BKS/TWD)
|
Signed October 15, 2025

**Attorneys and Law Firms**

SCOTT RUMMLER, Plaintiff, pro se, 105 Washington Street 307, Watertown, NY 13601.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1**  The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Scott Rummler ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff also seeks leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 2.

### II. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. Dkt. No. 2. Upon review, Plaintiff's IFP application demonstrates economic need. *See id*. Therefore, he is granted permission to proceed IFP. [1]

[1]     Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

### III. BACKGROUND

Plaintiff commenced the instant action utilizing the Court's form complaint pursuant to 42 U.S.C. § 1983. *See generally*, Dkt. No. 1. [2] The complaint identifies one Defendant, Jefferson County Emergency Medical Service. *Id*. at 1. The "facts" section of the complaint reads, in full: "Subjected to a no-knock, no notice, silent home entry invasion by an EMS team of about 5 individuals. They later admitted that they had the wrong address. There was no follow up to ensure it does not happen again." *Id*. at 2. Plaintiff listed three causes of action: (1) "Violation of New York Civil Rights Law, Sec 50-51;" (2) "Violation of Fourth Amendment rights;" and (3) "Violation of NY State Constitution, Art 1, Sec 12." *Id*. at 3. Concerning relief, Plaintiff requests the Court "Remit 300,000 for pain and suffering, civil rights violations, and to address medical conditions caused or worsened by the action." *Id*. at 4.

[2]     Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

2025 WL 3144207

## IV. LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

**\*2** Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See, e.g., Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with ... the Federal Rules of Civil Procedure ....") (internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

Upon review, even afforded a liberal construction, Plaintiff's complaint fails to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure and fails to state a claim. Therefore, the undersigned recommends dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

"The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with ... the Federal Rules of Civil Procedure." *Lewis v. New York State Bd. of Elections*, No. 8:24-CV-00849 (GTS/CFH), 2024 WL 4910561, at *4 (N.D.N.Y. Sept. 30, 2024) (additional quotations and citations omitted), *report and recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024). A complaint that fails to comply with the Federal Rules' pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*,

2025 WL 3144207

167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also, e.g., Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at \*2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

Under Rule 8, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). "The purpose of this Rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted); *see also, e.g., Boyd v. United States Gov't*, No. 1:25-CV-0225 (DNH/MJK), 2025 WL 1249698, at \*3 (N.D.N.Y. Apr. 30, 2025) (explaining, "allegations 'so vague as to fail to give the defendants adequate notice of the claims against them' are subject to dismissal.") (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order)), *report and recommendation adopted*, 2025 WL 1890326 (N.D.N.Y. July 9, 2025).

 **\*3**  Here, Plaintiff's complaint wholly fails to provide the Defendant with fair notice of the claims asserted. While Plaintiff alleges he was "[s]ubjected" to wrongdoing, *see* Dkt. No. 1 at 2, the complaint lacks any explanation as to how *the Defendant* harmed him. Indeed, the sole Defendant is not mentioned in Plaintiff's recitation of the facts. *See id*. Furthermore, the complaint lacks any indication as to *when* or *where* the alleged wrongdoing occurred. As such, the complaint should be dismissed for failure to state a claim. However, in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed without prejudice to allow Plaintiff the opportunity to cure these defects.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff must provide a short and plain statement of the relevant facts supporting his claim against any Defendant named in the amended complaint, including the date and time of the alleged occurrence(s), to his best approximation. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging the Defendant violated a law, he should specifically refer to such law. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** for failure to state a claim; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[3]     If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-

Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3144207

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3142416
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott RUMMLER, Plaintiff,

v.

JEFFERSON COUNTY EMERGENCY MEDICAL SERVICE, Defendant.

5:25-cv-1062 (BKS/TWD)
|
Signed November 10, 2025

**Attorneys and Law Firms**

Plaintiff pro se: Scott Rummler, Watertown, NY 13601.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**\*1** Plaintiff Scott Rummler brought this action pro se asserting claims under 42 U.S.C. § 1983 against Defendant Jefferson County Emergency Medical Service. (Dkt. No. 1). Plaintiff also sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks for an initial review pursuant to 28 U.S.C. § 1915(e)(2) and Local Rule 72.3(d). On October 15, 2025, Magistrate Judge Dancks granted Plaintiff's application to proceed IFP and issued a Report-Recommendation, recommending that Plaintiff's complaint be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. (Dkt. Nos. 5). Magistrate Judge Dancks informed Plaintiff that he had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 7). No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 5) is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total and must comply with the directions in the Report-Recommendation; and it is further

**ORDERED** that if Plaintiff timely files an amended complaint, it shall be referred to Magistrate Judge Dancks for review; and it is further

2025 WL 3142416

**ORDERED** that if Plaintiff fails to file a timely amended complaint, the Clerk shall close this case without further order; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3142416

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 1951849
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dontie S. MITCHELL, Plaintiff,

v.

Lee KINDLON, Albany County District Attorney, et al., Defendants.

9:25-CV-0602 (MAD/TWD)
|
Signed July 16, 2025

**Attorneys and Law Firms**

DONTIE S. MITCHELL, Plaintiff, pro se, 58894, Albany County Correctional Facility, 840 Albany Shaker Road, Albany, NY 12211.

## DECISION AND ORDER

MAE A. D'AGOSTINO, United States District Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a complaint filed by pro se plaintiff Dontie S. Mitchell ("plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"). Dkt. No. 5 ("Compl."). [1] Plaintiff, who is presently incarcerated at Albany County Correctional Facility ("Albany County C.F."), has not paid the filing fee for this action and seeks leave to proceed in forma pauperis ("IFP"). Dkt. No. 3 ("IFP Application"). Plaintiff also filed a motion for preliminary injunctive relief (Dkt. Nos. 6, 8, and 9).

[1]　On May 12, 2025, plaintiff filed a letter with the Court and asked that the Court consider the submission a "temporary complaint." *See* Dkt. No. 1. The letter did not include a caption, a list of parties, factual allegations, or any requests for relief. *See id.* Before the Court could respond to plaintiff's request, plaintiff filed a complaint. Dkt. No. 5. Accordingly, in light of plaintiff's pro se status, the Clerk of the Court is directed to attach the submission at Dkt. No. 1 to the complaint (Dkt. No. 5). The entire submission shall be deemed the operative pleading.

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein,* No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) *and Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. *See* Dkt. No. 4. Accordingly, the Court grants plaintiff's IFP Application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

2025 WL 1951849

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c) (2006).

 **\*2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

### B. Summary of the Complaint

In 2021, plaintiff was released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Compl. at ¶ 16. In April 2022, a seventeen year old male accused plaintiff of rape. *Id*. at ¶ 19. Defendant Detective Megan Craft ("Det. Craft") investigated the allegations and concluded that plaintiff and the accuser engaged in consensual sexual relations *Id*. at ¶¶ 20-22, 31. Because Det. Craft "did not approve", she "encouraged" and "influenced" the mother of plaintiff's adopted son to petition the family court for a temporary order of protection against plaintiff. Compl. at ¶ 24.

In July 2022, Det. Craft "falsely arrested and maliciously prosecuted" plaintiff for criminal contempt based upon violating the unlawful temporary restraining order. Compl. at ¶ 32. Det. Craft was aware that plaintiff would be released on the misdemeanor charge but she was also aware that plaintiff was on parole. *Id*. at ¶ 33. Therefore, Det. Craft delayed plaintiff's arraignment so that the Division of Parole could issue a warrant and take plaintiff into custody. *Id*. at ¶¶ 32-33. Plaintiff was confined at Albany County C.F. for 21 days. Compl. at ¶¶ 35-37. The contempt charges were dismissed. *Id*. at ¶ 37.

In January 2023, the Albany County District Attorney's Office closed the rape investigation for "lack of solvability." Compl. at ¶ 20.

**\*3** In August 2023, plaintiff was present at the scene of a murder in Cohoes, New York. Compl. at ¶¶ 41-52. On August 14, 2023, plaintiff was arrested by members of the State Police. *Id.* at ¶ 53. Defendant Police Investigator Jason Deluca ("Inv. Deluca") attempted to interrogate plaintiff. *Id*. at ¶ 54. Inv. Deluca refused to disclose "what happened at the incident about which he wanted to question plaintiff." *Id.* at ¶ 55. Inv. Deluca seized plaintiff's bag, keys, wallet, and cash without a warrant or probable cause and inventoried the items in the presence of defendant Police Investigator Casey Krul ("Inv. Krul"). Compl. at ¶ 57. Inv. Deluca and Inv. Krul "stole $2,100" from plaintiff. *Id*. at ¶ 60.

On August 14, 2023, defendant Detective Andrew Britt ("Det. Britt") "overcharged" plaintiff with two counts of reckless endangerment. Compl. at ¶ 61. On August 18, 2023, defendant Albany County Deputy Assistant District Attorney Jessica Blain-Lewis ("ADA Blain-Lewis") "had an Albany County grand jury overcharge plaintiff with murder" even though she "knew" plaintiff was innocent. *Id.* at ¶¶ 63-64. On December 13, 2023, the charges were dismissed for lack of legally sufficient evidence. *Id.* at ¶ 65.

Plaintiff participated in "a couple news interviews" criticizing the Albany County District Attorney's Office. Compl. at ¶ 66.

On February 2, 2024, ADA Blain-Lewis retaliated against plaintiff when she "had another Albany County grand jury overcharge plaintiff" with attempted murder. Compl. at ¶ 67. ADA Blain-Lewis "enlisted" defendant Detective Robert Lawyer ("Det. Lawyer") to assist her with the investigation which included discussions related to the prior rape accusation. *Id*. at ¶¶ 70-71. During the course of the investigation defendants "illegally" discovered videos of plaintiff engaging in consensual sex with a "legal adult" on plaintiff's devices. *Id*. at ¶¶ 72-73. ADA Blain-Lewis told Det. Lawyer to investigate the video as possible child pornography. *Id*. at ¶ 74. ADA Blain-Lewis "act[ed] outside her role as a prosecutor" and "directed, controlled, participated in, and aided the broadening investigation of plaintiff[.]" Compl. at ¶ 75. Det. Lawyer coerced and encouraged witnesses to falsely claim that plaintiff sexually assaulted them. *Id.* at ¶ 77.

ADA Blain-Lewis obtained an indictment charging plaintiff with a first-degree criminal sexual act (#71650-24).[2] Compl. at ¶ 79.

[2]    Plaintiff alleges that ADA Blain-Lewis' motion to consolidate Indictment No. 71650-24 with the attempted murder and weapon possession "case" was denied and "nothing more was done with this case." Compl. at ¶¶ 81-82.

During a jury trial in October 2024, ADA Blain-Lewis and Det. Lawyer "forced" witnesses to present false testimony during plaintiff's trial for attempted murder and weapon possession charges. Compl. at ¶¶ 83-85, 89. Plaintiff was acquitted of the attempted murder charge.[3] *Id.* at ¶ 87.

[3]    The complaint does not contain any allegations related to the outcome of the weapons possession charge. *See generally* Compl.

In December 2024, at ADA Blain-Lewis' direction, a different assistant district attorney obtained an indictment with charges of first-degree perjury, predatory sexual assault, seven counts of first-degree rape, two counts of third-degree rape, and ten counts of first-degree unlawful surveillance (#70257-25 and #70258-25). Compl. at ¶ 90. Defendant Albany County District Attorney Lee Kindlon ("Kindlon") "did nothing" to stop the "malicious prosecution." *Id*. at ¶ 93. DA Kindlon also refuses to release plaintiff's property including his electronic devices. *Id*. at ¶ 96.

Plaintiff, who is presently confined at Albany County C.F., has "made numerous requests to staff members" in an attempt to obtain copies, postage, legal supplies, folders, paper, and permission to use a laptop. Compl. at ¶¶ 97, 100. Plaintiff has elected

to proceed pro se in the pending criminal matter and is also a plaintiff in three civil matters, one in this District and two in Albany County, Supreme Court. *Id.* at ¶¶ 97, 110. Plaintiff suffers from pain in his right arm and hand and cannot "write for long periods." *Id.* at ¶ 99. Without a laptop, plaintiff "is concerned" he will be unable to prepare legal motions and a defense. *Id.* at ¶ 102. Plaintiff has written to defendant Chief Administrative Officer Lyons ("Lyons") and defendant Albany County Sheriff Craig Apple ("Apple") about his requests, but defendants have failed to take any action. Compl. at ¶¶ 106, 118.

**\*4** While incarcerated at Albany County C.F., at Apple's direction, plaintiff is transported to court in full shackles and leg restraints. Compl. at ¶¶ 130, 139. Plaintiff has written to Apple complaining about the transportation, but Apple did not respond. *Id*. at ¶ 133.

Construed liberally[4], the complaint contains the following: (1) false arrest claims; (2) malicious prosecutions; (3) First Amendment access-to-court claims; (4) Fourteenth Amendment condition-of-confinement claims; (5) Fourteenth Amendment due process claims related to property; (6) conspiracy claims; and (7) First Amendment retaliation claims. *See generally* Compl. Plaintiff seeks declaratory judgment, injunctive relief, and monetary damages. *See id*. at pp. 30-31.

[4]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. S*ee, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

### E. Analysis

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal,* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal,* 556 U.S. at 676).

### 1. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York,* No. 93-CV-1298

(RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

**\*5** Plaintiff's claims for monetary damages against defendants in their official capacity, *see* Compl. at pp. 2-3, are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (reasoning that a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state.").

### 2. False Arrest/Malicious Prosecution

The Fourth Amendment provides the source for Section 1983 claims related to a plaintiff's arrest, detention and prosecution. *See Caidor v. M&T Bank*, No. 5:05-CV-297 (FJS/GJD), 2006 WL 839547, at *3 (N.D.N.Y. Mar. 27, 2006); *Danielak v. City of N.Y.*, No. 02-CV-2349, 2005 WL 2347095, at *11 (E.D.N.Y. Sept. 26, 2005).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Jackson v. City of New York,* 939 F. Supp.2d 235, 248 (E.D.N.Y. 2013). Under both federal and New York law, the existence of probable cause "including probable cause based on an outstanding warrant" is a complete defense to a false arrest claim. *Torres v. City of N.Y.,* No. 09 CIV. 9357, 2016 WL 3748492, at *3 (S.D.N.Y. July 11, 2016) (citation omitted).

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment ... and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Id.* at 161 (quoting *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir. 1997)).

In *Heck v. Humphrey*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). Courts have held that a plaintiff "cannot pursue a civil rights claim based on false arrest and malicious prosecution while criminal charges are still pending against him in State Court." *Singleton v. State of N.Y.*, 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998) (citing cases). "If there are charges that are pending or if plaintiff pleaded guilty to the charges/has been convicted of the charges, the potential claims for false arrest and false imprisonment may

be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)." *Hardie v. City of Albany*, 2018 WL 4026736, at *5 (N.D.N.Y. Aug. 22, 2018), *report and recommendation adopted*, 2018 WL 4288614 (N.D.N.Y. Sept. 7, 2018).

### a. Det. Craft and Det. Britt

**\*6** Plaintiff asserts a false arrest claim against Det. Craft related to plaintiff's arrest for criminal contempt for violating an order of protection. Compl. at ¶¶ 31, 32,141. Construing the complaint liberally, plaintiff also asserts false arrest claims against Det. Britt with respect to charges of first-degree reckless endangerment. *Id*. at ¶ 61. These charges were dismissed. *Id.* at ¶¶ 37, 65.

Because plaintiff sufficiently alleges that the charges against him were dismissed, he has demonstrated that his cause of action for false arrest would not otherwise render his sentence invalid because his charges resulting from the arrest have been vacated. *See Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 2537312, at *2 (N.D.N.Y. June 20, 2019), *report and recommendation adopted*, 2019 WL 3454618 (N.D.N.Y. July 31, 2019). At this early stage in the litigation, the Court finds that plaintiff's false arrest claims against Det. Craft and Det. Britt survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### b. Claims Against DA Kindlon, ADA Blain-Lewis, and Det. Lawyer

Plaintiff asserts malicious prosecution claims against ADA Blain-Lewis, Det. Lawyer, and DA Kindlon related to charges of attempted murder, weapons possession, perjury, criminal sexual acts, and rape. *See* Compl. at ¶¶ 90, 136, 137, and 142.

Prosecutors enjoy absolute immunity from suit under Section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also Peay v. Ajello,* 470 F.3d 65, 67-68 (2d Cir. 2006) (The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity.). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 503 (2d Cir. 2004) (collecting cases). Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Id*. at 502-03. "Prosecutors are not absolutely immune if they conduct their own investigations, if they fabricate evidence or elicit known false evidence for use in a prosecution." *Longee v. Holloway*, No. 1:19-CV-00381, 2019 WL 6702418, at *5 (D. Idaho Dec. 9, 2019) (citing *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001)).

### i. Kindlon

The complaint does not contain any allegations that would plausibly suggest that Kindlon's actions fell outside his duties as District Attorney. Indeed, plaintiff sued Kindlon in his official capacity only. *See* Compl. at p. 2. Thus, at this stage of the proceeding, Kindlon is immune from suit and the claims against him are dismissed without prejudice. *See Hendley v. Nevada,* No. 2:20-CV-01447, 2021 WL 2213791, at *2 (D. Nev. Feb. 11, 2021) ("[s]tate prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official capacity"), *report and recommendation adopted,* 2021 WL 2211683 (D. Nev. June 1, 2021).

### ii. ADA Blain-Lewis and Det. Lawyer

In December 2024, plaintiff was acquitted of attempted murder. Compl. at ¶¶ 87, 89. With respect to these charges, plaintiff alleges that ADA Blain-Lewis "acted outside her role as a prosecutor, directed, controlled, participated in, and aided the broadening investigation of plaintiff[.]" *Id*. at ¶ 75. At this juncture, the Court directs Blain-Lewis to respond to plaintiff's malicious prosecution claim related to the attempted murder charge. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

**\*7** A different conclusion is reached with respect to the remaining malicious prosecution claims. In this regard, plaintiff concedes that the charges of weapons possession[5], first-degree perjury, predatory sexual assault, seven counts of first-degree

rape, two counts of third-degree rape, and ten counts of first-degree unlawful surveillance (Indictments # 70257-25 and 70258-25) are still pending. *See* Compl. at ¶ 90. "[I]t is well-settled that federal courts may not interfere with pending state criminal prosecutions, absent some extraordinary circumstance[.]" *Gonzalez v. City of Kingston*, No. 1:23-CV-01198 (GTS/CFH), 2024 WL 1550744, at *10 (N.D.N.Y. Apr. 10, 2024) (citation omitted), *report and recommendation adopted sub nom.*, 2024 WL 2836101 (N.D.N.Y. June 4, 2024). "[B]ecause a plaintiff 'cannot pursue a civil rights claim based on false arrest and malicious prosecution while criminal charges are still pending against him in State Court,' the [...] claims may be barred by *Heck v. Humphrey*[.]" *Beverly v. Cnty. of Rensselaer*, No. 1:18-CV-1293 (GLSDJS), 2019 WL 1198364, at *2 (N.D.N.Y. Mar. 14, 2019) (citation omitted).

5    As discussed *supra,* the complaint is devoid of any information related to the outcome of this charge.

Accordingly, the remaining malicious prosecution claims are dismissed without prejudice pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. First Amendment – Access to Court

Plaintiff claims that Lyons and Apple refused to provide him with legal supplies and a laptop in violation of his First Amendment right to access the courts. *See* Compl. at ¶ 138. Plaintiff claims he is unable to effectively represent himself in criminal and civil matters. *Id.*

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Konigsberg v. Lefevre*, 267 F.Supp.2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

However, "[a] hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis,* 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury,* 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16.

"Finally, ... the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] ... to challenge the conditions of [his] confinement." *Id.* at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

**\*8** Even assuming the truth of plaintiff's assertions, plaintiff has not pled that he suffered an "actual injury" as a result of defendants' actions. Plaintiff alleges he is "working on an omnibus motion and other legal documents" and a video "defense presentation" which he intends to submit in his criminal action. *See* Compl. at ¶¶ 104-105. While plaintiff claims the lack of

2025 WL 1951849

"accommodations" is "hampering" his attempts to present a defense in his criminal case, *see id.* at ¶ 108, the complaint lacks facts suggesting that plaintiff was unable to comply with court orders or that he suffered any "actual injury" in his criminal or civil actions. Indeed, the complaint does not contain any facts or information related to the procedural posture of the pending actions. *See Taylor v. John Doe Auburn Med. ADM & Health Care Provide*r, No. 9:23-CV-0017 (TJM/ATB), 2023 WL 2806119, at *4 (N.D.N.Y. Apr. 6, 2023), *on reconsideration in part sub nom.,* 2023 WL 3275781 (N.D.N.Y. May 5, 2023).

Further, a review of plaintiff's litigation history belies any claim that he was prevented from accessing courts in May and June 2025. In addition to filing the within action, on June 9, 2025, plaintiff submitted a letter motion in *Mitchell v. Annucci, et al.*, No. 9:20-CV-1407 (ECC/DJS), Dkt. No. 58 (N.D.N.Y. Jun. 9, 2025).

Because the complaint lacks any suggesting that plaintiff suffered an injury to a non-frivolous legal claim concerning his criminal conviction, habeas corpus petition, or conditions of confinement, plaintiff's First Amendment claims are dismissed. *See Lafferty v. Virts*, No. 23-CV-358, 2024 WL 4134254, at *5 (W.D.N.Y. Sept. 10, 2024).

Accordingly, the First Amendment access-to-court claims are dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1). *See, e.g., Chalif v. Spitzer,* No. 05-CV-1355, 2008 WL 1848650, at *11 (N.D.N.Y. Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal[.]"); *Joseph v. State, Dep't of Corrs.*, No. 92-CV-1566, 1994 WL 688303, at *1 (N.D.N.Y. Nov. 24, 1994) (dismissing the plaintiff's access to courts claim because the complaint "failed to allege any adverse effect caused by the alleged denial of his legal mail").

### 4. Condition of Confinement Claims

Plaintiff claims that the method of transporting him to court constituted a deprivation of his constitutional rights. *See* Compl. at ¶ 139. Plaintiff alleges he was transported, fully shackled, in "dangerous vehicles on routes most prone to vehicle accidents." *Id*.

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). Such a claim is typically analyzed under a two-pronged standard. First, the pretrial detainee must satisfy the "objective prong" showing that the conditions were "sufficiently serious" as to constitute objective deprivations of constitutional rights. *Id*. at 29. The objective prong of the deliberate indifference claim is the same as a convicted prisoner under the Eighth Amendment. *Id*. at 30. To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to "basic human needs —e.g., food, clothing, shelter, medical care, and reasonable safety." *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

**\*9** Second, the pretrial detainee must satisfy the "subjective prong" by showing that the officer acted with deliberate indifference to the challenged conditions. *Darnell,* 849 F.3d at 29. As to the "mens rea" prong, a pretrial detainee must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35; *see Bruno v. Schenectady,* 727 Fed. App'x 717 (2d Cir. 2018).

As presently pled, the complaint fails to allege sufficient facts to satisfy the objective or subjective standard. To wit, plaintiff has not provided any facts related to when he was transported, where he was transported, how often he was transported in this manner, or the identity of any officers involved in the transports, or any alleged injury. See *Thompson v. New York State Corr. & Cmty. Supervision*, No. 9:22-CV-289 (FJS/CFH), 2024 WL 580064, at *5 (N.D.N.Y. Feb. 13, 2024).

Accordingly, the Fourteenth Amendment claims against Apple are dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1). [6]

6    The Court notes that plaintiff does not address this cause of action in his request for relief. To the extent that plaintiff seeks monetary damages against Apple related to these conditions of confinement, plaintiff has sued Apple in his official capacity only. Accordingly, as discussed *supra*, any claim for monetary damages would be barred by the Eleventh Amendment.

### 5. Fourteenth Amendment – Property

Plaintiff alleges that Inv. Deluca and Inv. Krul stole his property in violation of his Fourteenth Amendment right to due process. *See* Compl. at ¶ 141.

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer,* 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed. App'x. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of*, inter alia,* a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Shabazz v. Pico,* 994 F.Supp. 460, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that the defendants destroyed his property in violation of his due process rights).

For the reasons set forth herein, plaintiff's claims related to property loss are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Conspiracy

Plaintiff alleges that Blain-Lewis and Det. Lawyer conspired to fabricate evidence to charge plaintiff with attempted to murder and weapon possession. *See* Compl. at ¶ 142.

"[A] conspiracy claim under 42 U.S.C. § 1983 must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal." *Vega v. Artus*, 610 F.Supp.2d 185, 202 (N.D.N.Y. 2009) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002) *and Concepcion v. City of New York*, No. 05 Civ. 8501, 2008 WL 2020363, at *5). "Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." *Vega,* 610 F.Supp.2d at 202-03. "Moreover, a Section 1983 conspiracy claim must not only allege a conspiracy, but the 'actual deprivation of constitutional rights.' " *Id.* at 203 (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363-64 (S.D.N.Y. 2000)) (additional citation omitted).

*10   Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes conclusory statements that defendants conspired with each other. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants. "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be enough to raise a right to relief above the speculative level." *Dorsey v. Fisher*, No. 09-CV-1011, 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (citations omitted); *see Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds").

Accordingly, plaintiff's conspiracy claims are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted. *See Delaney,* 2019 WL 6840152, at *4 (reasoning that the plaintiff

Mitchell v. Kindlon, Slip Copy (2025)
2025 WL 1951849

did plausibly plead a claim of conspiracy between the District Attorney and detectives as his argument appeared to be "based on his dissatisfaction over the strategy of his attorney and outcome of his criminal proceedings").

### 7. First Amendment - Retaliation

Plaintiff alleges that Blain-Lewis charged him with crimes, knowing he was innocent, in retaliation for plaintiff participating in "a couple news interviews criticizing the Albany County District Attorneys' Office." *See* Compl. at ¶¶ 66, 137.

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was "protected;" (2) that the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (emphasis in original). The objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001).

Plaintiff's retaliation claims are subject to dismissal for the following reasons. First, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Second, even assuming criticism of public officials is protected speech, the complaint lacks facts identifying when and where plaintiff participated in the news interviews or the sum and substance of the interviews. Indeed, the complaint lacks facts that would allow this Court to infer that Blain-Lewis was even aware of the interviews or how the interviews motivated the alleged retaliatory actions. Accordingly, plaintiff has not pled a viable retaliation claim. *See Shade v. Kinksey,* No. 1:18-CV-16, 2018 WL 2087261, at *3 (E.D. Mo. May 4, 2018) (dismissing retaliation claim because the plaintiff failed to identify any particular speech criticizing any of the defendants, or facts from which it could reasonably be inferred that any defendant was even aware of any such speech, "much less that they retaliated against him because of it.").

## IV. MOTION FOR PRELIMINARY INJUNCTION

 **\*11**  Plaintiff moves for an order directing Apple and Lyons to provide plaintiff with copies, postage, envelopes, and a laptop. Dkt. No. 6 at 1. Plaintiff also seeks an order directing Kindlon to release plaintiff's property. *Id*.

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "[T]his circuit has required a party seeking a preliminary injunction to show: (a) irreparable harm and (b) either (1) a substantial likelihood of success on the merits of the claim, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal quotation marks omitted). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will

result from a denial of preliminary relief." *Citigroup Global Mkts.,* 598 F.3d at 35 n.4 (internal quotation marks omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore,* 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Levesque v. Clinton County*, No. 10-CV-787 (DNH/DEP), 2012 WL 6948779, at *11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (holding that a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" him).

As plaintiff seeks a mandatory injunction, he must meet the higher standard and establish a clear or substantial likelihood of success of show that extreme or very serious damage would result in the absence of the requested relief. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir. 1995). Plaintiff's motion is denied for the following reasons.

First, as discussed *supra*, the only remaining defendants are Det. Craft, Det. Britt and Blain-Lewis. To the extent that plaintiff seeks injunctive relief against other individuals, who are not defendants in this action, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

 **\*12**  Even if the Court could provide the relief requested, the issues underlying plaintiff's requests for injunctive relief are unrelated to the surviving claims in this action. The complaint contains false arrest claims against Det. Craft and Det. Britt and malicious prosecution claims against Blain-Lewis. The issues surrounding plaintiff's access to legal supplies and a laptop and request for relief against Kindlon are unrelated to plaintiff's surviving claims. Thus, plaintiff cannot establish a likelihood of success on the merits of his underlying claim and plaintiff's request for relief is denied. *See Mitchell v. New York State Dep't of Corr. Srvs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (finding that the facts underlying the request for injunctive relief are essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context).

For the foregoing reasons, plaintiff's motion for preliminary injunctive relief is denied. [7]

[7]     Plaintiff is advised that concerns regarding his current conditions of confinement should be addressed through administrative channels at the facility and the New York State Department of Corrections and Community Supervision and, if necessary, by means of a properly filed action in the appropriate District Court.

## V. CONCLUSION
**WHEREFORE,** it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; [8] and it is further

[8]     Plaintiff should note that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's Inmate Authorization Form, and notify the official that this action has been filed and that plaintiff is required to

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 85 of 111

2025 WL 1951849

pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915;[9] and it is further

9      While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris*, 607 F.3d at 21).

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's Inmate Authorization Form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk of the Court is directed to attach the submission at Dkt. No. 1 to the complaint (Dkt. No. 5); and it is further.

**ORDERED** that the Section 1983 claims for monetary damages against defendants in their official capacities following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) all malicious prosecution claims brought against DA Kindlon and Det. Lawyer, and the malicious prosecution claims brought against Blain-Lewis relating to the charges of weapons possession, first-degree perjury, predatory sexual assault, seven counts of first-degree rape, two counts of third-degree rape, and ten counts of first-degree unlawful surveillance; (2) the First Amendment access to the courts claims; (3) the conditions of confinement claims; (4) the Fourteenth Amendment due process claims relating to property loss; (5) the conspiracy claims; and (6) the First Amendment retaliation claims;[10] and it is further

10     If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

 **\*13  ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the false arrest claim against Det. Craft and Det. Britt; and (2) the malicious prosecution claim against Blain-Lewis relating to the attempted murder charge; and it is further

**ORDERED** that the Clerk of the court shall **TERMINATE** from the docket report, the following defendants: Lee Kindlon, Craig Apple, Michael Lyons, Jason DeLuca, Casey Krul, and Robert Lawyer; and it is further

**ORDERED** that upon receipt of the documents for service from plaintiff, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and complaint to the Office of the Albany County Attorney, together with a copy of this Decision and Order; and it is further

**ORDERED** that defendants or their counsel, shall file a response to the complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary

2025 WL 1951849

to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff, together with a copy of the complaint.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1951849

---

**End of Document**    <span>© 2026 Thomson Reuters. No claim to original U.S. Government Works.</span>

2025 WL 3136383

KeyCite Blue-Striped Flag

Appeal Filed by   Mitchell v. Kindlon,   2nd Cir.,   December 16, 2025

2025 WL 3136383
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dontie S. MITCHELL, Plaintiff,

v.

Jessica BLAIN-LEWIS, et al., Defendants.

9:25-CV-0602 (MAD/TWD)

|

Signed November 10, 2025

**Attorneys and Law Firms**

DONTIE S. MITCHELL, Plaintiff, pro se, 58894, Albany County Correctional Facility, 840 Albany Shaker Road, Albany, NY 12211.

**DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge

## I. INTRODUCTION

 **\*1**  On June 6, 2025, pro se plaintiff Dontie S. Mitchell ("plaintiff") commenced this action by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), with an application to proceed in forma pauperis ("IFP"). Dkt. No. 5 ("Compl."); Dkt. No. 3 ("IFP Application"). By Decision and Order filed on July 16, 2025 (the "July 2025 Order"), the Court granted plaintiff's IFP Application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Dkt. No. 10. On the basis of that review, the Court found that the following claims required a response: (1) false arrest claims against defendants Detectives Craft and Britt; and (2) the malicious prosecution claim against defendant ADA Blain-Lewis. *Id.* at 26-27. All remaining claims were dismissed, without prejudice. *See id.*

On July 30, 2025, in lieu of providing documents for service, plaintiff filed a motion to reconsider the July 2025 Order. Dkt. Nos. 14 and 16. On September 2, 2025, plaintiff filed an amended complaint. Dkt. No. 15 ("Am. Compl."). On September 15, 2025, plaintiff filed a motion seeking preliminary injunctive relief. Dkt. No. 17. On October 3, 2025, plaintiff filed a submission in support of his motion for injunctive relief. Dkt. No. 18.

## II. MOTION TO RECONSIDER

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) reconsideration becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F.Supp. 923, 925 (N.D.N.Y. 1995) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.*; *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (holding that a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' "). Generally, motions for reconsideration are not granted unless "the

moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

By filing an amended complaint, plaintiff replaced the complaint. *See Meserole v. Sony Corp. of Am.*, 08 CV. 8987, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009) (if the Court were to grant the plaintiff's motion to reconsider after the filing of an amended complaint, that would result in two complaints pending in the same action); *see also Greenblatt v. Gluck,* No. 03 Civ. 597, 265 F.Supp.2d 346, 351 (S.D.N.Y. June 3, 2003) ("[e]ven if the motion were to be granted, [the plaintiff] has already filed a new complaint, such that the prior complaint could not in any case be reinstated."). Consequently, plaintiff's claims, will be analyzed *infra* and the motion for reconsideration is denied as moot.

## III. SUFFICIENCY OF AMENDED COMPLAINT

### A. Legal Standard

**\*2** The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the July 2025 Order and will not be restated in this Decision and Order. *See* Dkt. No. 10 at 2-4.

### B. Summary of Amended Complaint [1]

[1]     With the amended complaint, plaintiff provided exhibits. *See* Am. Compl. at 62-168. To the extent that the exhibits are relevant to the incidents described in the amended complaint, the Court will consider the documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

With the amended complaint, plaintiff asserts claims against the following defendants: Hon. Elizabeth Garry ("Judge Garry"), Hon. Rodger D. McDonough ("Judge McDonough"), District Attorney Lee Kindlon ("DA Kindlon"), Albany County Deputy Assistant District Attorney Jessica Blain-Lewis ("ADA Blain-Lewis"), Albany County Assistant District Attorney Ryan M. Carty ("ADA Carty"), Albany County Assistant District Attorney Jennifer McCanney ("ADA McCanney"), Albany County Sheriff Craig Apple ("Apple"), Chief Administrative Officer at Albany County C.F. Michael Lyons ("Lyons"), Police Investigator Jason DeLuca ("Inv. DeLuca"), Police Investigator Casey Krul ("Inv. Krul"), Detective Robert Lawyer ("Det. Lawyer"), Detective Megan Craft ("Det. Craft"), and Detective Andrew Britt ("Det. Britt"). [2] *See generally* Am. Compl.

[2]     The Clerk of the Court is directed to amend the Docket Report to include these defendants.

In 2021, plaintiff was released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Am. Compl. at ¶ 20. In April 2022, a seventeen year old male accused plaintiff of rape. *Id.* at ¶ 23. Det. Craft investigated the allegations and concluded that plaintiff and the accuser engaged in consensual sexual relations. *Id.* at ¶¶ 24-26. Det. Craft suppressed exculpatory evidence, including a video recording of her interview with the accuser. *Id.* at ¶ 27. Because Det. Craft "did not approve" of the relationship, she "encouraged" and "influenced" the mother of plaintiff's adopted son to petition the family court for a temporary order of protection against plaintiff. Am. Compl. at ¶ 30.

In July 2022, Det. Craft "falsely arrested and maliciously prosecuted" plaintiff for criminal contempt based upon violating the unlawful temporary restraining order. Am. Compl. at ¶¶ 38-40. Det. Craft was aware that plaintiff would be released on the misdemeanor charge but she was also aware that plaintiff was on parole. *Id.* at ¶ 40. Therefore, Det. Craft delayed plaintiff's arraignment so that the Division of Parole could issue a warrant and take plaintiff into custody. *Id.* at ¶ 41. Plaintiff was confined at Albany County C.F. for 21 days. *Id.* at ¶ 42. The contempt charges were dismissed. Am. Compl. at ¶ 44.

In August 2023, plaintiff was present at the scene of a murder in Cohoes, New York. Am. Compl. at ¶¶ 48-60. On August 14, 2023, plaintiff was arrested by members of the State Police. *Id.* at ¶ 61. Inv. Deluca attempted to interrogate plaintiff. *Id.* at ¶

62. Inv. Deluca refused to disclose "what happened at the incident about which he wanted to question plaintiff." *Id.* at ¶ 63. Inv. Deluca seized plaintiff's bag, keys, wallet, and cash without a warrant or probable cause and inventoried the items in the presence of Inv. Krul. Am. Compl. at ¶ 63, 68. Inv. Deluca and Inv. Krul "stole $2,100" from plaintiff. *Id.* at ¶ 68.

**\*3** On August 14, 2023, Det. Britt "overcharged" plaintiff with two counts of reckless endangerment. Am. Compl. at ¶ 69. On August 18, 2023, ADA Blain-Lewis "had an Albany County grand jury overcharge plaintiff with murder" even though she "knew" plaintiff was innocent. *Id.* at ¶¶ 69-71. On December 13, 2023, the charges were dismissed for lack of legally sufficient evidence. *Id.* at ¶ 73.

In December 2023, plaintiff participated in news interviews criticizing the Albany County District Attorney's Office. Am. Compl. at ¶¶ 74, 110. The reporters reached out to DA Kindlon and ADA Blain-Lewis, who refused to comment. *Id.* at ¶¶ 75, 111. ADA Blain-Lewis, ADA McCanney, and ADA Carty watched the interviews and were aware that plaintiff criticized their office and "exposed" their malicious and unethical conduct. *Id.* at ¶¶ 76, 92.

On February 2, 2024, ADA Blain-Lewis retaliated against plaintiff when she "had another Albany County grand jury overcharge plaintiff" with attempted murder. Am. Compl. at ¶¶ 77-78. ADA Blain-Lewis "enlisted" ADA McCanney, ADA Carty, and Det. Lawyer to assist her with the investigation which included discussions related to the prior rape accusation. *Id.* at ¶ 81. During the course of the investigation defendants "conspired" together, exchanging communications, discussing their plans to investigate plaintiff including using the prior rape allegations. *Id.* at ¶¶ 82-84. Defendants "illegally" discovered videos of plaintiff engaging in consensual sex with a "legal adult" on plaintiff's devices. *Id.* at ¶ 85. Defendants "re-opened" the rape investigation. Am. Compl. at ¶ 87. ADA Blain-Lewis told Det. Lawyer to investigate the video as possible child pornography. *Id.* at ¶ 89. ADA Blain-Lewis, ADA McCanney, and ADA Carty "act[ed] outside their roles as prosecutors" and "aided and abetted," "directed, controlled, participated in, and aided the broadening investigation of plaintiff[.]" *Id.* at ¶ 91.

ADA McCanney, ADA Carty, and Det. Lawyer coerced and encouraged witnesses to falsely claim that plaintiff sexually assaulted them. Am. Compl. at ¶ 94. ADA Blain-Lewis obtained an indictment charging plaintiff with a first-degree criminal sexual act (Indictment No. 71650-24). *Id.* at ¶ 96. ADA Blain-Lewis, ADA McCanney, ADA Carty, and Det. Lawyer supported perjured testimony before the grand jury in July 2023. *Id.* at ¶ 97.

ADA Blain-Lewis' motion to consolidate Indictment No. 71650-24 with the attempted murder and weapon possession "case" was denied and "nothing more was done with this case." Am. Compl. at ¶¶ 98-100. ADA Blain-Lewis and Det. Lawyer "forced" witnesses to present false testimony during plaintiff's trial for attempted murder and weapon charges. *Id.* at ¶¶ 101, 104-107. Plaintiff was acquitted of the attempted murder charge and convicted of criminal possession of a weapon. *Id.* at ¶ 109.

In December 2024, at the direction of DA Kindlon and ADA Blain-Lewis, ADA Carty and Det. Lawyer expanded their investigation into plaintiff's alleged inappropriate sexual contact with underage boys. Am. Compl. at ¶¶ 112-113. In February 2025, due to the malicious and unethical investigative activities of ADA Blain-Lewis, ADA Carty, DA Kindlon, and Det. Lawyer, plaintiff was indicted with charges of first-degree perjury, predatory sexual assault, seven counts of first-degree rape, two counts of third-degree rape, and ten counts of first-degree unlawful surveillance (Indictment Nos. 70257-25 and 70258-25). *Id.* at ¶¶ 129-143.

**\*4** DA Kindlon, ADA Blain-Lewis, and ADA Carty refused to release plaintiff's property, including his electronic devices. Am. Compl. at ¶¶ 144-147. Plaintiff filed an Article 78 petition for the release of his property, but the petition was denied. *Id.* at ¶ 147. Plaintiff filed "repeated motions for renewal and reargument, the latest of which was denied in July of 2025." *Id.* at ¶ 149. Plaintiff could not appeal the dismissal because he could not obtain copies, postage, envelopes, legal supplies, or permission to use a laptop from defendants Apple and Lyons. *Id.* at ¶¶ 148, 150, 156.

Plaintiff is proceeding pro se in the pending criminal matters and in three civil matters, one in this District and two in Albany County, Supreme Court. Am. Compl. at ¶¶ 151, 172, 173. Plaintiff suffers from pain in his right arm and hand and cannot "write

2025 WL 3136383

for long periods." *Id.* at ¶ 154. Lyons and Apple limited plaintiff's access to a laptop, legal supplies, and postage, and, thus, plaintiff is unable to prepare legal motions, prosecute his cases, or prepare his defense.[3] *Id.* at ¶¶ 156-159-196.

[3]    Plaintiff used a laptop to prepare the amended complaint, but was "told he is technically not allowed to use these laptops for this purpose." Am. Compl. at ¶ 157.

Judge McDonough presides over one of plaintiff's criminal matters. Am. Compl. at ¶¶ 208-209. McDonough is "biased" against plaintiff for "proceeding pro se" and "his belief that plaintiff is a sexual predator." *Id.* McDonough belittled plaintiff and asked "frivolous" questions during a hearing. *Id.* at ¶ 211. On February 13, 2025, McDonough "illegally" revoked plaintiff's pro se status. *Id.* at ¶¶ 212-215. McDonough refuses to provide plaintiff with the necessary "tools" to effectively present a defense. Am. Compl. at ¶ 229.

While incarcerated at Albany County C.F., at Apple's direction, plaintiff is transported to court in "metal boxes with sharp edges while in full shackles and leg restraints." Am. Compl. at ¶¶ 277-278. The vehicle travels at 65 miles per hours, during busy traffic, and is not equipped with seatbelts. *Id.* at ¶¶ 279-280. During one transport, plaintiff suffered minor injuries when a deputy "breaked suddenly" causing plaintiff to fall onto other prisoners. *Id.* at ¶¶ 281-283. Plaintiff has written to Apple complaining about the transportation, but Apple did not respond. *Id.* at ¶ 289

Construing the amended complaint liberally[4], plaintiff alleges the following: (1) false arrest and malicious prosecution claims; (2) First Amendment access-to-court claims; (3) First Amendment retaliation claims; (4) Fourth Amendment due process claims related to property; (5) conspiracy claims; (6) Sixth Amendment claims; (7) condition-of-confinement claims; and (8) state law claims. Am. Compl. at ¶¶ 278-293. Plaintiff seeks monetary damages, injunctive relief, and declaratory judgment. *See id.* at pp. 57-59.

[4]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

### C. Analysis

#### 1. False Arrest/Malicious Prosecution

**\*5**  The law related to false arrest and malicious prosecution claims was discussed in the July 2025 Order and will not be restated herein. *See* Dkt. No. 10 at 10-11. In the July 2025 Order, the Court directed Det. Craft and Det. Britt to respond to plaintiff's false arrest claims and directed ADA Blain-Lewis to respond to the malicious prosecution claim related to the attempted murder charge. *See id.* at 12-13. Those claims are repeated in the amended complaint and thus, survive review. Defendants are directed to respond to these claims.

In the July 2025 Order, the Court dismissed plaintiff's malicious prosecution claims against DA Kindlon because DA Kindlon was sued in his official capacity only and thus, was immune from suit. *See* Dkt. No. 10 at 12. With the amended complaint, plaintiff sues DA Kindlon in his individual and official capacity and asserts new malicious prosecution claims against Det. Lawyer, ADA McCanney and ADA Carty. *See* Am. Compl. at ¶ 9. At this juncture, the Court directs DA Kindlon, Det. Lawyer, ADA McCanney, and ADA Carty to respond to the malicious prosecution claims related to the attempted murder charge.

In the July 2025 Order, the Court dismissed the remaining malicious prosecution claims related to charges of weapons possession, first-degree perjury, predatory sexual assault, seven counts of first-degree rape, two counts of third-degree rape, and ten counts of first-degree unlawful surveillance (Indictment Nos. 70257-25 and 70258-25) because the criminal prosecutions were still pending. *See* Dkt. No. 10 at 14. With the amended complaint, plaintiff concedes that he was convicted of weapons possession. The conviction precludes his claims for malicious prosecution. *See Peeples v. Fiorito*, No. 3:19-CV-00868 (TJM/TWD), 2020 WL 4050248, at *9 (N.D.N.Y. July 20, 2020), *report and recommendation adopted sub nom. Peeples v. FBI Agent Chris Fiorito,* 2020 WL 6128167 (N.D.N.Y. Oct. 19, 2020). With respect to the remaining claims, the allegations in the amended complaint do not remedy the deficiencies in this portion of plaintiff's malicious prosecution claims. For the reasons set forth in the July 2025 Order, these malicious prosecution claims are dismissed.

### 2. First Amendment – Access to Courts

The law related to access-to-court claims was discussed in the July 2025 Order and will not be restated herein. *See* Dkt. No. 10 at 14-17. In the July 2025 Order, the Court dismissed the access-to-court claims holding:

> Even assuming the truth of plaintiff's assertions, plaintiff has not pled that he suffered an "actual injury" as a result of defendants' actions. Plaintiff alleges he is "working on an omnibus motion and other legal documents" and a video "defense presentation" which he intends to submit in his criminal action. *See* Compl. at ¶¶ 104-105. While plaintiff claims the lack of "accommodations" is "hampering" his attempts to present a defense in his criminal case, see id. at ¶ 108, the complaint lacks facts suggesting that plaintiff was unable to comply with court orders or that he suffered any "actual injury" in his criminal or civil actions. Indeed, the complaint does not contain any facts or information related to the procedural posture of the pending actions. *See Taylor v. John Doe Auburn Med. ADM & Health Care Provider*, No. 9:23-CV-0017 (TJM/ATB), 2023 WL 2806119, at *4 (N.D.N.Y. Apr. 6, 2023), *on reconsideration in part sub nom.*, 2023 WL 3275781 (N.D.N.Y. May 5, 2023).

> Further, a review of plaintiff's litigation history belies any claim that he was prevented from accessing courts in May and June 2025. In addition to filing the within action, on June 9, 2025, plaintiff submitted a letter motion in *Mitchell v. Annucci, et al.*, No. 9:20-CV-1407 (ECC/DJS), Dkt. No. 58 (N.D.N.Y. Jun. 9, 2025).

>  **\*6** Because the complaint lacks any suggesting that plaintiff suffered an injury to a non-frivolous legal claim concerning his criminal conviction, habeas corpus petition, or conditions of confinement, plaintiff's First Amendment claims are dismissed. *See Lafferty v. Virts*, No. 23-CV-358, 2024 WL 4134254, at *5 (W.D.N.Y. Sept. 10, 2024).

Dkt. No. 10 at 16-17. With the amended complaint, plaintiff claims Lyons and Apple refuse to provide access to legal materials, copies, postage, envelope, paper, and computers to prepare legal motions and a defense and alleges he is "to the point he is ready to give up on representing himself and on pursuing his legitimate and non-frivolous legal claims." Am. Compl. at ¶ 169. Additionally, plaintiff summarily states, without any supporting facts, that the "actions" have "negatively affected" his ability to represent himself. *Id*. at ¶ 170.

These allegations do not cure the deficiencies in plaintiff's access-to-court claims. At best, plaintiff speculates that he will be unable to satisfy Court requirements and deadlines, but offers no facts suggesting he suffered an "actual injury." The allegations in the amended complaint do not cure the deficiencies in this claim as addressed in the July 2025 Order. For the reasons set forth in the Court's prior Order, the access-to-court claims are dismissed.

### 3. First Amendment – Retaliation

The law related to retaliation claims was discussed in the July 2025 Order and will not be restated herein. *See* Dkt. No. 10 at 21-22. In the July 2025 Order, the Court dismissed plaintiff's retaliation claims against ADA Blain-Lewis holding

... even assuming criticism of public officials is protected speech, the complaint lacks facts identifying when and where plaintiff participated in the news interviews or the sum and substance of the interviews. Indeed, the complaint lacks facts that would allow this Court to infer that Blain-Lewis was even aware of the interviews or how the interviews motivated the alleged retaliatory actions. Accordingly, plaintiff has not pled a viable retaliation claim.

Dkt. No. 10 at 22. With the amended complaint, plaintiff claims that, in December 2023, he was interviewed by CBS 6 News and WNYT News 13. Am. Compl. at ¶ 74. The reporters "reached out" to ADA Blain-Lewis for comment. *Id.* at ¶ 75. ADA Blain-Lewis "had another Albany County grand jury overcharge plaintiff with [ ] attempted murder" in retaliation for criticizing her officer. *Id.* at ¶¶ 77-78. Plaintiff also claims that ADA McCanney and ADA Carty "viewed" the interviews and retaliated against plaintiff by maliciously prosecuting him. *Id.* at ¶ 92. At this juncture, plaintiff has provided sufficient information related to his retaliation claims to require a response from ADA Blain-Lewis, ADA McCanney, and ADA Carty. This is not a ruling on the merits and the Court expresses no opinion whether these claims can survive a properly filed motion to dismiss or for summary judgment.

### 4. Due Process – Property

The law related to property claims was discussed in the July 2025 Order and will not be restated herein. *See* Dkt. No. 10 at 19. In the July 2025 Order, the Court dismissed plaintiff's property claim because plaintiff had "adequate state law remedies" in a "Court of Claims action." *Id.* at 19. The allegations in the amended complaint do not remedy the deficiencies in plaintiff's claim. For the reasons set forth in the July 2025 Order, the property claims are dismissed.

### 5. Conspiracy

**\*7** The law related to conspiracy claims was discussed in the July 2025 Order and will not be restated herein. *See* Dkt. No. 10 at 20-21. The Court dismissed the conspiracy claims noting that the allegations did not support a "meeting of the minds" and did not rise above "the speculative level." *Id.* at 20.

The amended complaint does not cure the deficiencies, addressed in the July 2025 Order, with respect to the conspiracy claims. Thus, for the reasons set forth in the July 2025 Order, plaintiff's conspiracy claims are dismissed.

### 6. Sixth Amendment

Plaintiff claims that Judge McDonough violated his Sixth Amendment right to adequately represent himself during a trial. *See* Am. Compl. at ¶¶ 282-283.

Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 9-10 (1991). "Judicial immunity has been created both by statute and by judicial decision 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of the consequences.' " *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation and internal quotation marks omitted)). The law in this Circuit clearly provides that "[j]udges enjoy absolute immunity from personal liability under Section 1983 for 'acts committed within their judicial jurisdiction.' " *Young v. Selsky*, 41 F.3d 47,

51 (2d Cir. 1994) (quoting *Pierson*, 386 U.S. at 554). "The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id*. at 51 (internal quotations omitted). Thus, under the common law doctrine of judicial immunity, a judge is absolutely immune from a suit for monetary damages unless (1) the actions giving rise to the suit were "not taken in the judge's judicial capacity" or (2) the suit arises from actions taken by the judge "in the complete absence of all jurisdiction." *Huminski v. Corsones*, 386 F.3d 116, 137-38 (2d Cir. 2004) (citations omitted). [5]

[5]    Similarly, injunctive relief is not available in an action pursuant to Section 1983 against a judicial officer for acts taken in that official's judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff's allegations do not plausibly suggest that such relief is available here.

In short, the proper avenue for challenging a judicial determination is on direct appeal, not by seeking a declaration that the presiding judge's decision violated the litigant's constitutional rights. *Montesano v. State of New York,* No. 05 CV 9574, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006). "Neither damages, injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments." *Id.*

Upon review of the complaint and with due regard for plaintiff's status as a pro se litigant, it appears that any claims plaintiff may have against Judge McDonough arise solely out of the performance of his judicial duties in presiding over plaintiff's criminal proceedings and determining the issues presented therein. As a result, Judge McDonough is absolutely immune from liability and plaintiff's claims against him are dismissed with prejudice. *See Woods v. Sturim*, No. 22-CV-4389, 2022 WL 7566007, at *4 (E.D.N.Y. Oct. 13, 2022) (dismissing the plaintiff's claims against judge who allegedly denied the plaintiff the right to defend himself pro se).

### 7. Conditions of Confinement

 **\*8**  The law related to Fourteenth Amendment deliberate indifference claims was discussed in the July 2025 Order and will not be restated herein. *See* Dkt. No. 10 at 17-18. In the July 2025 Order, the Court dismissed plaintiff's claims against Apple related to transportation because plaintiff did not provide facts related to when he was transported, where he was transported, how often he was transported in this manner, or the identity of any officers involved in the transports, or any alleged injury. *Id*. at 18.

With the amended complaint, plaintiff claims he suffered "minor injuries" due to a "deputy" breaking suddenly in "December of 2025." Am. Compl. at ¶ 281. Because plaintiff submitted his amended complaint in September 2025, the aforementioned allegations, the new facts do not alter the Court's conclusions regarding these claims. For the reasons set forth in the July 2025 Order, plaintiff's Fourteenth Amendment claims are dismissed.

### 8. State Law

Plaintiff claims the DA and ADA defendants defamed him. *See* Am. Compl. at ¶ 281. New York State law provides the remedy for a defamation claim. However, "there is no constitutionally protected interest in the preservation of one's reputation." *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000). A defamation claim may be maintained under the Due Process Clause if plaintiff establishes a "stigma plus" claim. *Brooks v. Jackson*, No. 11 Civ. 6627, 2013 WL 5339151, at *11 (S.D.N.Y. Sept. 23, 2013). In order to plead a "stigma plus" claim, an individual must "allege (1) the utterance of a statement about [him or] her that is injurious to [his or] her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks and citations omitted). The plaintiff must also prove that the statements were made public to create a stigma. *Brooks,* 2013 WL 5339151, at *11.

Here, the amended complaint is void of any allegations suggesting that any defendant publicized any statement. Plaintiff has not plead that he sustained any damage to his reputation that resulted in a deprivation of a constitutionally protected right or interest. Accordingly, plaintiff's defamation claim is dismissed.

### 9. Claims Against Defendant Garry

Plaintiff identified Judge Garry as a defendant in the caption and list of parties. *See* Am. Compl. at 1-2. However, the amended complaint lacks factual allegations suggesting that Judge Garry was personally involved in any conduct that violated plaintiff's constitutional rights. Indeed, Judge Garry is not referenced anywhere in the body of the amended pleading. As such, the pleading lacks sufficient information to allow plaintiff to proceed with his claims against this defendant. *See Cipriani v. Buffardi,* No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl,* No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

## IV. MOTION FOR INJUNCTIVE RELIEF

Plaintiff seeks an order enjoining McDonough from "enforcing the September 24, 2025 deadline" for plaintiff to file an omnibus motion in a criminal matter. Dkt. No. 17 at 3.

**\*9** Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)). "[T]his circuit has required a party seeking a preliminary injunction to show: (a) irreparable harm and (b) either (1) a substantial likelihood of success on the merits of the claim, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal quotation marks omitted). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.,* 684 F.3d 286, 294 (2d Cir. 2011). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore,* 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Levesque v. Clinton County,* No. 10-CV-787 (DNH/DEP), 2012 WL 6948779, at *11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (holding that a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" him).

Pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), a federal court may not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief except under special circumstances. These special circumstances include showing that the state is acting in bad faith or solely for purposes of harassment, or a showing that a statute challenged is "flagrantly and patently violative of express constitutional prohibitions." *Id.* at 46, 53-54. Such circumstances do not present themselves

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 95 of 111

here. *See Barker v. Suffolk Cnty.*, No. 24-CV-07941, 2024 WL 4827739, at *3 (E.D.N.Y. Nov. 18, 2024) (declining to issue a preliminary injunction where the plaintiff's claims were connected to an ongoing criminal proceeding).

Even assuming the *Younger* Abstention Doctrine was not applicable, plaintiff's request is denied. Here, the remaining defendants are Det. Craft, Det. Britt, DA Kindlon, ADA Blain-Lewis, ADA McCanney, ADA Carty, and Det. Lawyer. To the extent that plaintiff seeks injunctive relief against individuals who are not defendants in this action, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, in-junction over a party over whom it does not have personal jurisdiction.").

Even if the court could provide relief requested, the issues underlying plaintiff's request for injunctive relief are unrelated to the surviving claims in this action. The complaint contains false arrest/malicious prosecution and First Amendment retaliation claims. *See generally* Am. Compl. The issues addressed in the within motion involve a criminal action in state court. These issues are unrelated to plaintiff's underlying claims. Thus, plaintiff cannot establish a likelihood of success on the merits of his underlying claim and plaintiff's request for relief is denied. *See Lewis v. Johnston*, No. 9:08-CV-0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007); *see also Mitchell v. New York State Dep't of Corr. Srvs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (finding that the facts underlying the request for injunctive relief are essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context).

**\*10** Accordingly, plaintiff's motion for preliminary injunctive relief (Dkt. No. 17) is denied

**V. CONCLUSION**
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion for reconsideration (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that the amended complaint (Dkt. No. 15) is accepted for filing and deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court shall amend the Docket Report to add the following defendants: Judge Garry, Judge McDonough, DA Kindlon, ADA Carty, ADA McCanney, Apple, Lyons, Inv. DeLuca, Det. Krul, and Det. Lawyer; and it is further

**ORDERED** that the following claims survive review and require a response: (1) false arrest claims against Dets. Craft and Britt; (2) malicious prosecution claims against DA Kindlon, ADA Blain-Lewis, ADA McCanney, ADA Carty, and Det. Lawyer related to the attempted murder charges; and (3) First Amendment retaliation claims against ADA Blain-Lewis, ADA McCanney, and ADA Carty; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted: (1) remaining malicious prosecution claims; (2) First Amendment access-to-court claims; (3) Fourteenth Amendment property claims; (4) conspiracy claims; (5) Sixth Amendment claims; (6) Fourteenth Amendment conditions-of-confinement claims; (7) state law claims; and (8) claims against Judge Garry;[6] and it is further

6    Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not

required where the plaintiff has already been afforded the opportunity to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at \*5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at \*5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at \*8 (N.D.N.Y. Jan.130 2008); *see also Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

**ORDERED** that the Clerk of the Court shall terminated the following defendants from the Docket Report: Garry; McDonough; Apple, Lyons, Deluca, and Krul; and it is further

**ORDERED** that, upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy of the summons and amended complaint to the Office of the Albany County Attorney, together with a copy of this Decision and Order; and it is further

 **\*11  ORDERED** that a response to the amended complaint be filed by the defendants, or counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff's motion for injunctive relief (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3136383

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

1998 WL 438530

1998 WL 438530
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

John SINGLETON, Plaintiff,

v.

STATE of New York; City of New York; Criminal Court of the City of New York, Its Judges, Its Attorneys, Its Referees, Its Officers, Its Agents and Its Employees; The People of the State of New York; District Attorney Robert M. Morganthau; Assistant District Attorney Maurice Mathis; Investigator Nicholas Vessio; City of New York Department of Corrections; Does I through X, inclusive, and Roe Corporations I through X, inclusive, Defendants.

No. 98 CIV. 0414(LAP).
|
July 31, 1998.

MEMORANDUM AND ORDER

PRESKA, D.J.

**\*1** Plaintiff, John Singleton, brings this action *pro se* under 42 U.S.C. § 1983 alleging that defendants have violated his Constitutional rights by falsely arresting him and maliciously prosecuting him. Plaintiff seeks monetary damages in the amount of $2 million and injunctive relief. Defendants move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the instant complaint is barred by res judicata and collateral estoppel,[1] and further, that the complaint fails to state a claim upon which relief can be granted.

[1] The Court will not address the collateral estoppel or res judicata grounds for dismissal because the previous case upon which defendants base their argument, *Sierra, et al., v. United States of America,* et al., 97 Civ. 9329(LAK), has been reopened under a different docket No., 97 Civ. 8244(RWS). The Court notes that although plaintiff was a party to the original class action suit, he is not named as a party in the newly reopened case.

BACKGROUND

As the result of an investigation by the New York City Department of Investigation, in conjunction with the New York County District Attorney and the New York State Attorney General, plaintiff was arrested and suspended without pay—along with numerous other city employees most of whom, including plaintiff, are employees of the Department of Corrections—for income tax evasion.[2] Plaintiff alleges that defendants violated his Constitutional rights by having him "falsely arrested with [a] bogus felony complaint" and that he "is the victim of prosecutorial fraud." Plaintiff also states that he was "arrested without a warrant or [his] Miranda rights."

[2] Plaintiff is charged in Criminal Court of the City of New York with violations of Penal Law § 175.35—Offering a False Instrument for Filing in the First Degree (Class E Felony) and Tax Law § 1801(a)—Failure to File a return or report; supply information (Class A Misdemeanor). *See* Defendant's Motion to Dismiss, at 3; Amended Complaint, at 5.

In response to defendants' motion, plaintiff filed an "Amended Complaint" which contains essentially the same allegations as the original complaint but names different defendants and reduces its demand for damages.[3]

Singleton v. State of N. Y., Not Reported in F.Supp.2d (1998)
1998 WL 438530

3     Plaintiff filed his original complaint on January 2, 1998. Defendant moved to dismiss the complaint on March 9, 1998. Plaintiff filed the instant amended complaint on March 20, 1998 which replaced original defendants Deputy Chief Investigator Phil Alba, Department of Corrections Director Richard Fillapazza, Inspector General Michael Caruso, and Commissioner Michael Jacobson with District Attorney Robert M. Morganthau, Assistant District Attorney Maurice Mathis, and Investigator Nicholas Vessio. The amended complaint also demands $2 million damages rather than $5 million as originally demanded.

## DISCUSSION

"In considering Rule 12 motions to dismiss, the Court must accept the facts appearing on the face of the amended complaint as true, and consider them along with such reasonable inferences as may be drawn in complainant's favor." *Detko v. Blimpies Restaurant,* 924 F.Supp. 555, 556 (S.D.N.Y.1996). *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994) (citation omitted). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' ' *Ryder Energy Distribution Corp. v. Merril Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980).

A Rule 12(b)(6) motion can only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)); *see Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir.1994) (same); *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (same), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994); *Ricciuti v. New York City Transit. Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (same).

Moreover, as a *pro se* litigant, plaintiff is entitled to significant liberality in how his pleadings are construed and pleadings such as plaintiff's are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *see Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989). Nevertheless, for the following reasons, defendants' motion to dismiss the complaint is granted.

I. *The Eleventh Amendment Bars the Claims Against New York State and The City of New York Criminal Court*
**\*2**  Initially, the claim against the State of New York must be dismissed because the Eleventh Amendment bars from federal court all § 1983 suits for legal or equitable relief brought by citizens against unconsenting states and agencies of such states. *Alabama v.. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *see also Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (reaffirming *Edelman,* § 1983 does not override the immunity granted to states under the Eleventh Amendment); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 40 (2d Cir.1977) (New York is an unconsenting state). New York has not waived its constitutional protection under the Eleventh Amendment by consenting to suit by this plaintiff in this case. *See, e.g., McAllan v. Malatzky,* No. 97 Civ. 8291(JGK), 1998 WL 24369, at *4 (S.D.N.Y. Jan.22, 1998) (dismissing section 1983 claim against state of New York and its agencies).

Likewise, as an agency of the State of New York, the New York City Criminal Court is immune from suit under the Eleventh Amendment. *See Casaburro v. Giuliani,* 986 F.Supp. 176, 182 (S.D.N.Y.1997) (New York City Criminal Court is immune from suit under the Eleventh Amendment). Furthermore, the claim against the Court must be dismissed because section 1983 provides that an action may only be maintained against a "person" who has deprived another of rights under the "Constitution and Laws." 42 U.S.C. § 1983. A court is not a "person" within the meaning of § 1983. *Zuckerman v. Appellate Division, Second Dep't, Supreme Court,* 421 F.2d 625, 626 (2d Cir.1970); *Mathis v. Clerk of First Dep't, Appellate Div.,* 631 F.Supp. 232 (S.D.N.Y.1986).

II. *Plaintiff Failed to Allege Exceptional Circumstances Required for District Court to Intervene in a State Proceeding*

1998 WL 438530

Plaintiff's allegations concerning his 1997 indictment and his request for injunctive relief must be also be dismissed because the charges against plaintiff are still pending in state court. It is well-settled that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm. *Younger v. Harris,* 401 U.S. 37 (1971); *see also Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). As plaintiff has failed to make the requisite showing of extraordinary circumstances as set forth in *Younger,* the complaint must be dismissed.

### III. *Plaintiff's Claim of False Arrest and Malicious Prosecution is not Cognizable Under Section 1983*

Plaintiff cannot pursue a civil rights claim based on false arrest and malicious prosecution while criminal charges are still pending against him in State Court. *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994) ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."); *Cameron v. Fogarty,* 806 F.2d 380, 386–88 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *see also Dukes v. New York,* 743 F.Supp. 1037, 1040–41 (S.D.N.Y.1990). Because plaintiff has not alleged that the state court proceedings have terminated in his favor—indeed, they appear to be ongoing—his false arrest, false imprisonment and malicious prosecution claims must be dismissed.

### IV. *Plaintiff Has Failed to Allege Personal Involvement by Defendants*

 **\*3** Plaintiff has failed to allege specific facts to show how each defendant he names is responsible for the violations of federal law he alleges. As a prerequisite to a damage award under 42 U.S.C. § 1983, a plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation, *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991), or that he or she had actual or constructive notice of the deprivation. Liability for damages in a § 1983 action may not be based on the *respondeat superior* or vicarious liability doctrines. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Furthermore, even if plaintiff were to allege personal involvement on the part of District Attorney Morganthau or Assistant District Attorney Mathis, all claims against these defendants must still be dismissed because prosecutors are immune from civil suits for acts committed within the scope of their official duties where the challenged activities are not investigative in nature, but rather are "intimately associated with the judicial phase of the criminal process...." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Dory v. Ryan,* 25 F.3d 81 (2d Cir.1994). In the instant case, plaintiff's only claim against these defendants is simply that they brought charges against plaintiff. This conduct is clearly "intimately associated with the judicial phase of the criminal process" and is thus entitled to absolute prosecutorial immunity. *Imbler,* 424 U.S. at 430; *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1148 (2d Cir.1995) ("[A]bsolute immunity extends to those acts, whether in or out of the courtroom, 'which occur in the course of the prosecutor's role as an advocate for the State" ') (citations omitted).

Finally, there being no allegations in the complaint (other than in the caption) as to any of the fictitious defendants, the complaint is dismissed as to Does I through X and Roe Corporations I through X on the ground that the complaint fails to state a claim as to which relief may be granted.

CONCLUSION

Defendants' motion to dismiss is granted in its entirety. The Clerk of Court is directed to enter judgment dismissing the complaint and closing the case.

SO ORDERED:

1998 WL 438530

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 438530

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 101 of 111

Hardie v. City of Albany, Not Reported in Fed. Supp. (2018)
2018 WL 4026736

2018 WL 4026736
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas HARDIE, Plaintiff,

v.

CITY OF ALBANY; Jarrod M. Jourdin, City of Albany Police Officer; Raven Symone
Dixon. City of Albany Police Officer; Unidentified Name Police Officer, Defendants.

1:18-CV-470 (GLS/CFH)
|
Signed 08/22/2018

**Attorneys and Law Firms**

Thomas Hardie, 18-A-0282, Woodbourne Correctional Facility, 99 Prison Road, PO Box 1000, Woodbourne, New York 12788, pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, U.S. Magistrate Judge

**\*1** Plaintiff pro se Thomas Hardie commenced this action on April 16, 2018 with the filing of a complaint. Dkt. No. 1 (Compl.). In lieu of paying this Court's filing fee, plaintiff filed an application to proceed in forma pauperis (IFP). Dkt. No. 2. Plaintiff also filed a motion for appointment of counsel. Dkt. No. 3. On June 22, 2018, the Court directed administrative closure of the case with an opportunity to either file a completed and signed IFP application or pay the Court's full filing fee. Dkt. No. 6. On July 2, 2018, plaintiff paid the Court's filing fee, and the case was reopened. Dkt. Nos. 7, 8. On July 11, 2018, plaintiff requested leave of the Court to amend his complaint, and filed certain changes/corrections to the complaint. Dkt. No. 10. On July 20, 2018, plaintiff requested that service be completed by the U.S. Marshals, stating that he understands that he must pay the cost of service by the U.S. Marshals, and requesting to know the cost of service. Dkt. No. 11. As an initial matter, as plaintiff chose to pay this Court's filing fee, rather than submit a complete IFP application, plaintiff's motion to proceed IFP is denied. Dkt. No. 2, Dkt. Entry dated 7/2/18.

**II. Legal Standards**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider his claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) ).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the

2018 WL 4026736

adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought ....

**\*2** FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III. Plaintiff's Complaint

Plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983, against defendants City of Albany, City of Albany Police Officer Jarrod M. Jourdin, City of Albany Police Officer Raven Symone Dixon, and John Doe defendant "unidentified name police officer." Compl. at 1. Plaintiff's civil cover sheet indicates that he brings this action pursuant to this Court's federal question jurisdiction for violations of the Fourth and Fourteenth Amendments due to defendants' use of excessive force and for deprivations of due process. Dkt. No. 1-1 at 1.

Plaintiff contends that on April 28, 2017, defendant Jourdin and an unidentified police officer "irrationally approached" plaintiff outside of his home "without explanation of reason." Compl. at 7. Plaintiff contends that these officers "forcefully push[ed] me, pull[ed] me and physically assault[ed] me from a standing position, to a knockdown position on the ground." Id. at 8. Officers forced "both of my hands to be stretched out above my head, as A.P.O. Jarrod M. Jourdin stepped, stomped and applied foot pressure on my right hand" which "injured/fractured my right hand 4[th] digit finger, and restrained both my hands on the ground

2018 WL 4026736

and handcuffed me, without explanation or reason for their cause of my apprehension." Id. Plaintiff contends that Dixon was the officer who arrested him, and neither she, or the other officers, read him Miranda rights. Id.

 **\*3** Plaintiff contends that, at some later point during the booking process, Dixon informed him that he was stopped and arrested because "a female that I was in a relationship with, made a police complaint regarding a domestic dispute inside of her apartment at 224 Clinton Ave, Albany N.Y., approx. one half hour before the irrational police approach upon me, outside of my home/ property at 228 Clinton Ave, Albany N.Y. in the street." Id. at 10.

Plaintiff contends that after his arrest, he was brought to the Albany Police Department Unit 2 booking division. Compl. at 9. Plaintiff had a "noticeable bleeding right hand injury, visually seen and known by the transporting officer, who knowingly deprived me of receiving medical assistance, after informing the officer that I was in pain." Id. Plaintiff contends that plaintiff "made a personal request for medical attention" to Dixon, showed her his right hand injury and told her that he was in pain, but Dixon "indifferently advised me to sit down, and attempted to interrogate me, which I did not respond to." Id. at 10. Plaintiff was not informed of his Miranda rights prior to Dixon attempting to question him. Id. Plaintiff requested of Dixon, in front of Jourdin, that photographs be taken of his right hand injury, but "P.O. Jourdin unjustifiably grabbed my lower right arm, and consciencely [sic] agitated my right hand with an agonizing twist, with the inclusion of, tightly applying handcuffs onto both of my wrists, with my hands in back of me." Id. This action caused plaintiff "unbearable pain," and plaintiff informed Jourdin of this. Id. Plaintiff contends that he was unable to have his fingerprints taken at booking because the officer who was to perform the fingerprinting refused to complete fingerprinting "when he closely visualized the entire right hand swelling, bleeding and disfigurement." Id. at 12. After the fingerprints were unable to be taken, Jourdin "grabbed the center chain of the handcuff with both my hands behind my back, unreasonably excessively yanked, pulled and raised my cuffed hands above my back waist level, agonizing the tortuous pain that I was already enduring, as he pushed and shoved me into a jail holding cell, from the hours of approximately 3:30 a.m. thru 10 a.m. on Saturday April 29 th 2017." Id.

After a Court appearance the next morning, where the Judge noted plaintiff's hand injury for the record, plaintiff was brought to Albany County Correctional Facility "without any provision of medical assistance on my behalf ... before placing me into the custody of A.C.C.F., after I requested for medical attention." Compl. at 13. The Albany County Correctional Facility booking officer questioned plaintiff about his hand injury and noted on intake forms that the injury occurred before plaintiff's entry into Albany County Correctional Facility. Id. at 13-14. Plaintiff received medical treatment at the Correctional Facility that involved his hand being "soaked in a liquid saline solution that removed the dried blood that had decayed on my right hand. The open wound on my right hand 4 th digit finger was treated with a coat of bacatracin [sic], and then my entire right hand and fingers were wrapped with gauze, with no further medical attention/treatment." Id. at 14.

Plaintiff as detailed for four days without further medical treatment. Compl. at 14. Plaintiff states that on May 3, 2017, his hand became "seriously infected, with dripping pus." Id. at 15. He was seen by an Albany County Correctional Facility doctor who prescribed antibiotics and took X-rays, which revealed a fracture to his "4 th digit finger of [his] right hand." Id. Plaintiff was later ordered an "emergency outside medical trip" to the Bone and Joint medical center in Albany, New York. Id. His hand was treated and placed in a cast. Id. After three weeks, plaintiff returned and was fit for a new cast and prescribed therapy "to straighten the fingerbone." Id. at 16.

 **\*4** Plaintiff contends that the City of Albany "failed to train, supervise and discipline its police dept/involved police officer(s)" to protect citizens' rights and civil liberties. Compl. at 17. Plaintiff contends that the individual defendants violated his rights in their official capacity. Id. Plaintiff demands "Actual damages" of $3 million for the City of Albany, $2.5 million in compensatory damages and $1.5 million in punitive damages from defendant Jourdin in his official capacity, and $1.5 million in compensatory damages and $1 million in punitive damages from Officer Dixon in her official capcity. Id.

Case 5:26-cv-00696-BKS-CBF   Document 6   Filed 07/17/26   Page 104 of 111

Hardie v. City of Albany, Not Reported in Fed. Supp. (2018)
2018 WL 4026736

## IV. Analysis

Plaintiff argues that the defendant police officers Jourdin, Dixon, and the unnamed John Doe officer violated his Fourth Amendment right against excessive force and his fourteenth amendment right to due process of the laws. It is recommended that these claims proceed insofar as plaintiff brings the claims against the officers in their individual capacities only. [1]

[1]     Plaintiff's attempt to sue the officers in their official capacities will be discussed below. Infra at 14.

Plaintiff attempts to set forth a Monell claim against the City of Albany for failing to properly train or supervise the police officers to prevent the officers from violating his civil rights. "Local governments are only responsible for their own illegal acts and are not vicariously liable for their employees' actions under a theory of respondent superior." Waller v. City of Middletown, 89 F. Supp. 3d 279, 284 (D. Conn. 2015) (citation omitted). However, " '[a] municipality or other local government may be liable under [Section 1983] if the government body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.' " Id. (quoting Connick v. Thompson, 563 U.S. 51 (2011) ). "Therefore, to state a Section 1983 claim against a municipality, a plaintiff is required to plead a violation of a federally protected right that was caused by the municipality's official policy or custom, or by a decision of a policymaker with final policymaking authority." Id. (citing Monell v. Dep't of Soc. Services, 436 U.S. 658 692 (1978) ). "Where as here, a municipality's training program is at issue, 'failure to train [municipal] employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the [municipal] employees interact.' " Id. (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) ).

> To succeed on this claim, Plaintiff would eventually have to submit evidence that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights. Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). Additionally, a Plaintiff must "establish that defendant breached its duty to act by failing to make meaningful efforts to address the risk of harm to plaintiffs." Id.

Lyman v. City of Albany, 536 F. Supp. 2d 242, 250 (N.D.N.Y. 2008).

At this early stage, the undersigned recommends that plaintiff be permitted to proceed on his Monell claim against the City of Albany for failure to train or supervise its employees in relation to his arrest. See generally Waller, 89 F.Supp. 3d at 285-86 (recognizing that where the plaintiff does not plead a pre-existing pattern of violations, the plaintiff's Monell claim against the city turns on a "single violation demonstrating that the City was deliberately indifferent" as it relates to the plaintiff's incident with the officers, and noting that although it is not clear whether a plaintiff can proceed under a Monell claim of a single incident, Supreme Court case law has not precluded such a claim).

 *5  Arguably, reading plaintiff's complaint liberally, although not separately pleaded as a cause of action, the undersigned discerns from the body of plaintiff's complaint that plaintiff may be attempting to set forth a deliberate indifference claim against officers Jourdin and Dixon insofar as he contends that he requested medical attention, but his requests were denied.

> The medical needs of an arrestee held in state custody are protected by the Due Process Clause of the Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The official custodian of an unconvicted detainee may be found liable for violating the detainee's due process rights if the official disregarded a risk of harm to the plaintiff of which the official was aware. Id. at 71. This requires a showing that the plaintiff had a "serious medical condition" that the defendant met with "deliberate indifference." Id. at 72. (internal quotation marks omitted).

Hardie v. City of Albany, Not Reported in Fed. Supp. (2018)
2018 WL 4026736

Liberta v. City of Rome, No. 6:10-CV-1104, 2012 WL 695851, at *3 (N.D.N.Y. Feb. 29, 2012).[2] At this early stage, and reading plaintiff's pleadings as true—as the Court must—plaintiff arguably has stated enough to proceed on a deliberate indifference claim.[3] It is recommended that plaintiff's complaint be liberally read as pleading a deliberate indifference claim.

[2]    Any unpublished cases cited within this Report-Recommendation and Order have been provided to plaintiff.

[3]    The undersigned makes no conclusion as to whether plaintiff's claims, should he wish to plead it, would survive a properly-pleaded motion to dismiss or motion for summary judgment.

It is unclear whether plaintiff is attempting to pursue a claim against the officers for false arrest[4] and/or false imprisonment. To the extent that plaintiff contends that he was arrested and detained without probable cause, the Court notes that plaintiff states that he learned that he was searched due to a domestic violence complaint made against him. Plaintiff does not inform the Court whether he faced any charges resulting from the arrest, and, if so, whether he was convicted of the charges, plead to the charges, or if the charges are still pending or have been dropped or otherwise reversed. If there are charges that are pending or if plaintiff pleaded guilty to the charges/has been convicted of the charges, the potential claims for false arrest and false imprisonment may be barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

> Under Heck and its progeny, a "§ 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the [plaintiff's] suit (state conduct leading to conviction or internal prison proceedings) —if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

Matthews v. County of Cayuga, 5:17-CV-1004 (MAD/TWD), 2018 WL 2926272, at *3 (N.D.N.Y. June 8, 2018) (quoting Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ). Unless and until the arrest, and any resulting charges, is favorably adjudicated in plaintiff's favor, his potential claims of false arrest and false imprisonment are barred by Heck and subject to dismissal pursuant to 28 U.S.C. 1915(e)(2)(B).

[4]    A claim for false arrest "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." Morris v. Silvestre, 604 F. App'x 22, 24 (2d Cir. 2015) (summary order). Liability may attach where an officer fails to intervene, but observes or has reason to know ... that "a citizen has been unjustifiably arrested," if the officer "had a reasonable opportunity to intervene to prevent the violation from happening." Jackson v. Tellado, 236 F. Supp. 3d 636, 654 (E.D.N.Y. 2017) (citation omitted). It is also noted that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to a claim for false arrest." Hoatling v. LaPlante, 167 F.Supp. 2d 517, 521 (N.D.N.Y. 2001) (citation omitted). This is also true for claims of false imprisonment. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). " 'A Section 1983 claim for false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause.' " Cea v. Ulster County, 309 F.Supp. 2d 321, 329 (N.D.N.Y. 2004) (quoting Sulkowska v. City of N.Y., 129 F.Supp. 2d 274, 287 (S.D.N.Y. 2001) ).

 *6  Accordingly, insofar as plaintiff may seek to bring claims against defendants for false arrest and false imprisonment, it is recommended that claims be dismissed without prejudice and with opportunity to amend to provide plaintiff with an opportunity to demonstrate to the Court whether he faced any charges stemming from the arrest, and if so, whether the charges are still pending and/or whether he has been convicted of any charges stemming from the arrest.

Insofar as plaintiff seeks to amend his complaint, plaintiff does not need the leave of the Court as he filed the amended complaint before service of the complaint upon defendants. Dkt. No. 10; FED. R. CIV. P. 15(a)(B). However, in submitting his request to file an amended complaint and the proposed amended pleading, plaintiff still failed to follow Rule 15 of the Federal Rules of Civil Procedure and this Court's Local Rule 7.1. Any amended complaint must be complete pleading which, if accepted by the Court for filing, will supersede and replace the original complaint in its entirety; thus, the amended complaint becomes the operative pleading and the original complaint is no longer considered. See Dluhos v. Floating & Abandoned Vessel, Known as

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 106 of 111

Hardie v. City of Albany, Not Reported in Fed. Supp. (2018)
2018 WL 4026736

New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ). Further,

> This requirement is buttressed by the Local Rules of Practice of this District ("Local Rules"), which provide, in pertinent part, that amended pleadings must be complete pleadings which will supersede the original pleading in all respects. See N.D.N.Y.L.R. 7.1(a)(4). The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." Id. One of the purposes of the requirement that an amended complaint be itself a complete pleading is to ensure that all of the allegations asserted against the defendants are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him. This requirement also eliminates the confusing nature of "piecemeal" amended complaints. In other words, an amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in the action.

Bennett v. Fletcher, No. 9:17-CV-849GTSCFH, 2018 WL 557885, at *1 (N.D.N.Y. Jan. 18, 2018) (internal citations omitted).

Plaintiff's July 11, 2017 letter motion seeking to amend the complaint does not submit an entirely new pleading that can replace fully the original complaint. Instead, plaintiff provides only the portions of the complaint he wishes to correct/amend. He seeks to (1) add that officers Jourdin and Dixon acted in their individual capacities, in addition to official capacities, (2) add the word "while" to the second and third causes of actions, and (3) remove his request for $3 million from the city of Albany and instead add that he is requesting "no monetary damages entered, against, City of Albany." Dkt. No. 10 at 1. He did not submit a proposed amended pleading that incorporates these amendments into the full complaint. In light of special solicitude, although the proposed corrections/proposed amended pleading fully fails to comply with Local Rule 7.1 and Rule 15 of the Fed. R. Civ. P., in light of special solicitude, it is recommended that plaintiff's submissions at dkt. no. 1 and dkt. no. 10-2 be read together and be docketed separately as an amended complaint. However, plaintiff is advised that, despite his pro se status, he must follow all of this Court's Local Rules and the Fed. R. Civ. P. The Clerk of the Court is directed to provide plaintiff with a copy of this Court's Local Rules of practice.

 *7  In both the original complaint and amended complaint, plaintiff seeks to sue the individual defendants in their official capacities. Although the amendments add that defendants were acting also in their individual capacities, it does not appear that plaintiff removes the references to official capacity. Although the prayer for relief in the amended complaint indicates that defendants acted in their individual capacities, the causes of action still state that defendants acted in their official capacities. Regardless, insofar as plaintiff seeks to bring this action against the individual officers in their official capacities, it is recommended that such claims be dismissed with prejudice. Complaints against state officials sued in their official capacities are barred under the Eleventh Amendment. See, e.g., Kentucky v. Graham, 473 U.S. 159, 167 (1985).

Thus, it is recommended that, insofar as plaintiff's complaint may be read as attempting to sue defendants in their official capacities, such claims be dismissed with prejudice. However, plaintiff may be able to proceed against these defendants in their personal capacities because "[s]uits against state officials in their personal capacity are not barred by the Eleventh Amendment, even for actions required by their official duties...." N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York, 911 F. Supp. 2d 111, 131 (N.D.N.Y. 2012) (citing Hafer v. Melo, 502 U.S. 21, 31 (1991) ).

### V. Motion for Counsel

Plaintiff requests appointment of counsel. Dkt. No. 3. He provides letters he sent to two attorneys—one who declined to take representation and the other who did not respond. Dkt. No. 3. It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement,

2018 WL 4026736

the court should then consider a number of other factors in making its determination. 28 F.3d at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986) ); see also Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d at 69 (noting that a motion for appointment of counsel may be properly denied if the court "concludes that [the party's] chances of success are highly dubious" (citations omitted) ). The factors to be considered in deciding whether or not to assign counsel include the following:

1. Whether the plaintiff's claims seem likely to be of substance;

2. Whether the plaintiff is able to investigate the crucial facts concerning his claim;

3. Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

4. Whether the legal issues involved are complex; and

5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997); see also Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986). "Counsel may be appointed in cases where it appears that such counsel will provide substantial assistance in developing petitioner's arguments, the appointment will otherwise serve the interests of justice, and where the litigant has made 'a threshold showing of some likelihood of merit.' " Campbell v. Correctional Medical Care, Inc., No. 14-CV-6136T, 2014 WL 2608334, at *5 [5] (quoting Cooper v. A. Sargenti Co., 877 F.2d 170, 174 (2d Cir. 1989) ). Further, prior to evaluating a request for appointment of counsel, the plaintiff must make a threshold showing—that he is unable to obtain counsel through the private sector or public interest firms. Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting Hodge, 802 F.2d at 61).

[5]     Unpublished decisions cited within this Decision and Order have been provided to plaintiff pro se.

**\*8** It is too early in this proceeding to make a determination as to whether the various factors lean in favor of appointment of counsel. Hendricks, 114 F.3d at 392. The fact that plaintiff is pro se and may be inexperienced in legal matters does not require this Court to appoint plaintiff counsel. Were that the case, counsel would need to be appointed to nearly every pro se plaintiff in civil actions. Appointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances, not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation. Although plaintiff may prefer the assistance of counsel, it does appear, based on plaintiff's submissions, that he is capable of representing his positions. See, e.g., Brown v. Enzyme Dev. Div. of Biddle Sawyer Corp., 780 F. Supp. 1025, 1026 (S.D.N.Y. 1992). Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case. See Ballard v. United States, 11 Civ. 7162 (JSR/RLE), 2012 WL 3765022, at *1 (S.D.N.Y. Aug. 30, 2012) (denying appointment of counsel and stating that, "other than his general comment that he is 'completely unfamiliar with law,' " the plaintiff "has not demonstrated any marked difficulties in presenting his case and fails to state why appointment of counsel would increase the likelihood of a just determination in this case."). As indicated above, this case is at the earliest of stages, as plaintiff has only just commenced this action and the Court is in the process of reviewing the merits of the claims, and defendants have not even been served. Accordingly, plaintiff's motion for counsel is dismissed without prejudice.

### VI. Request for Service by U.S. Marshals

Plaintiff requests that the U.S. Marshals complete service upon defendants, and asks the cost for service by the U.S. Marshals, acknowledging that he will be required to pay for service by Marshals. Dkt. No. 11. Plaintiff's request to have the U.S. marshals attempt service on named defendants at plaintiff's expense is granted to the limited extent that, (1) *if* the District Judge, following review of this Report-Recommendation and Order, concludes that plaintiff's complaint should proceed, or (2) *if* plaintiff files an amended complaint, upon the Court's separate review of that complaint it is determined that the complaint shall proceed, the plaintiff may proceed by service by U.S. Marshals. If it is determined that service of a complaint is proper, the Clerk shall

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 108 of 111

Hardie v. City of Albany, Not Reported in Fed. Supp. (2018)
2018 WL 4026736

then send plaintiff three blank USM-285 Forms for his use. Upon receipt from the Clerk of plaintiff's payment of the service fee, which is $8.00 per service attempt per defendant, and the documents required for service, the U.S. Marshal shall attempt to serve the summons and complaint upon the defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure. Plaintiff must comply with any additional requests from the U.S. Marshal for documents that are necessary to effectuate service, and must provide payment in advance to the U.S. Marshal for any subsequent service attempt if the original attempt to serve any defendant is unsuccessful. It is again noted that the Clerk of the Court is not to direct summons by U.S. Marshal until (1) the Court approves a complaint for service upon defendants, and (2) plaintiff pays the service fee and completes the proper papers for service.

### VII. John Doe Defendant

As a final note, the undersigned observes that plaintiff names a John Doe defendant: "unidentified name police officer." See Compl. Plaintiff is advised that he must take reasonable steps to identify this John Doe defendant. Once plaintiff does identify this defendant, he must then seek permission from the Court for leave to amend his complaint in order to provide the name of this John Doe defendant such that the Court may amend the caption, replacing the unnamed defendant with the name provided by the plaintiff. A plaintiff's failure to identify a John Doe defendant within a reasonable time may result in the charges being dismissed against that John Doe defendant.

### VIII. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for in forma pauperis relief, Dkt. No. 2, is **DENIED**, as plaintiff failed to submit the full IFP application, [6] and it is further

[6] The Court acknowledges that plaintiff instead paid the Court's filing fee. However, regardless of payment of the filing fee, the Court has the right to complete section 1915 review. See Weissbrod v. Gonzalez, 576 F. App'x 18, 19 (2d Cir. 2014) (summary order) (quoting Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) ("A district court has the inherent authority to dismiss an action as frivolous, even when the plaintiff has paid the filing fee.") ).

**\*9** **ORDERED**, that plaintiff's request to submit amendments to his complaint is **GRANTED to the limited extent** that the Court will accept the filing at Dkt. No. 10-2 for filing, and, in light of special solicitude, will consider the complaint filed at dkt. no. 1 together with the amendments contained in dkt. no. 10-2, together as an amended complaint and the Court will give the amended complaint (Dkt. Nos. 1, 10-2) a new entry on the docket, and that the letter motion is **otherwise DENIED**; and it is

**ORDERED**, that plaintiff's motion for appointment of counsel, dkt. no. 3, is denied without prejudice to renewal should plaintiff demonstrate a change in circumstances, and it is

**ORDERED**, that plaintiff's request for service by the U.S. Marshals, Dkt. No. 11, is granted, and, should the District Judge adopt this Report-Recommendation and Order, the Clerk of the Court shall, without further order of the Court, forward to plaintiff three blank USM-285 Forms, and that plaintiff shall pay all fees for service upon defendants ($8.00 per defendant, per service attempt) and complete any and all necessary forms needed for service prior to any attempt of service; and it is

**RECOMMENDED**, that all claims against Officers Jourdin, Dixon, and Unidentified Name Police Officer in their official capacities be dismissed with prejudice, and it is

Case 5:26-cv-00696-BKS-CBF    Document 6    Filed 07/17/26    Page 109 of 111

Hardie v. City of Albany, Not Reported in Fed. Supp. (2018)
2018 WL 4026736

**RECOMMENDED**, that plaintiff's amended complaint (dkt. nos. 1, 10-2) proceed insofar as it alleges (1) claims against the individual officers in their individual capacities, (2) Monell claim against the City of Albany, (3) 14th Amendment deliberate indifference claim against the individual officers, and (4) Fourth Amendment excessive force claim against the individual officers; and it is further

**RECOMMENDED**, that insofar as plaintiff's complaint can be read as attempting to set forth claims for false arrest and false imprisonment against the individual officers, such claims be dismissed without prejudice and with opportunity to amend to allow plaintiff to demonstrate that his claims are not barred by Heck; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be given an opportunity to amend his complaint should he wish to attempt to cure the pleading defects in his false arrest/false imprisonment claims, and that plaintiff be given thirty (30) days from the adoption of this Report-Recommendation and Order to file such amended complaint, [7] and that if plaintiff declines to file a second amended complaint, his amended complaint will proceed sans the false arrest/false imprisonment claim; and it is further

[7] Plaintiff is advised that, if the District Judge permits him to file a second amended complaint to attempt to cure the Heck issue, and should plaintiff choose to file a second amended complaint, the second amended complaint must (1) be a complete pleading: thus, plaintiff must include **all** factual allegations and legal claims he wishes to include and he may not refer to the amended complaint; and (2) may not attempt to replead claims that were dismissed by the Court with prejudice. An amended complaint is meant to supercede and replace in its entirety any prior complaint. See N.D.N.Y. L.R. 7.1(a)(4). *Failure to follow these requirements will result in the undersigned recommending that the Court reject any future amended pleadings.*

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, the Clerk of the Court will (1) wait thirty days following the District Judge's adoption of the Report-Recommendation and Order to see if plaintiff files an amended complaint, and (a) if plaintiff files such amended complaint, the amended complaint be returned to the undersigned for review, or (b) if plaintiff does not file an amended complaint within thirty days of the District Judge's adoption of this Report-Recommendation and Order, the Clerk of the Court shall prepare this case for service of summonses and amended complaint (dkt. nos. 1, 10-2) upon defendants; and it is

**\*10** **ORDERED**, that the Clerk of the Court provide plaintiff with a copy of this Court's Local Rules, and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4026736

End of Document                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Hardie v. City of Albany, Not Reported in Fed. Supp. (2018)

2018 WL 4288614

2018 WL 4288614
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas HARDIE, Plaintiff,

v.

CITY OF ALBANY et al., Defendants.

1:18-cv-470 (GLS/CFH)

|

Signed 09/07/2018

**Attorneys and Law Firms**

THOMAS HARDIE, Woodbourne Correctional Facility, 99 Prison Road, PO Box 1000, Woodbourne, NY 12788, pro se.

## <u>ORDER</u>

Gary L. Sharpe, U.S. District Judge

**\*1** The above-captioned matter comes to this court following a Report-Recommendation and Order by Magistrate Judge Christian F. Hummel, duly filed on August 22, 2018. (Dkt. No. 12.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, [1] and the court having reviewed the Report-Recommendation and Order for clear error, it is hereby

[1]    On September 4, 2018, plaintiff filed a letter advising the court that he has no objection to the Report-Recommendation and Order. (Dkt. No. 14.) He has, however, filed several documents that evince his intent to amend his pleadings. (Dkt. No. 14, Attach. 1; Dkt. No. 15.) While any amended complaint must be a wholly-integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court, those documents are referred to Judge Hummel for further review.

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 12) is **ADOPTED** in its entirety; and it is further

**ORDERED** that all claims against defendants Jarrod M. Jourdin, Raven Symone Dixon, and John Doe "unidentified name police officer," in their official capacities, are **DISMISSED with prejudice**; and it is further

**ORDERED** that, insofar as plaintiff's complaint can be read as attempting to set forth claims for false arrest and false imprisonment against the individual officers, such claims are **DISMISSED without prejudice** and with opportunity to amend to allow plaintiff to demonstrate that his claims are not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further

**ORDERED** that plaintiff's remaining claims are: (1) claims against individual officers in their individual capacities; (2) a *Monell* claim against the City of Albany, (3) a Fourteenth Amendment deliberate indifference claim against the individual officers, and (4) a Fourth Amendment excessive force claim against the individual officers; and it is further

**ORDERED** that plaintiff's latest filing (Dkt. No. 15) be referred to Judge Hummel for review; and it is further

Case 5:26-cv-00696-BKS-CBF   Document 6   Filed 07/17/26   Page 111 of 111

2018 WL 4288614

**ORDERED** that the Clerk provide a copy of this Order to the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4288614

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---